[Civ. No. 37103. Second Dist., Div. Two. May 24, 1971.]

RONALD F. WHITE, Plaintiff and Appellant, v.
DONALD W. COX, Defendant and Respondent.

**COUNSEL**

Hafif & Shernoff and Stephen L. Odgers for Plaintiff and Appellant.

Staitman & Snyder and Jack M. Staitman for Defendant and Respondent.

**OPINION**

**FLEMING, J.**—Plaintiff White owns a condominium in the Merrywood condominium project and is a member of Merrywood Apartments, a non-profit unincorporated association which maintains the common areas of Merrywood. In his complaint against Merrywood Apartments for damages for personal injuries White avers he tripped and fell over a water sprinkler negligently maintained by Merrywood Apartments in the common area of Merrywood. The trial court sustained Merrywood's demurrer without leave to amend and entered judgment of dismissal.[1] White appeals.

[1]Technically, the trial court entered a summary judgment for defendant in that it took into consideration a stipulation of facts submitted by the parties.

The question here is whether a member of an unincorporated association of condominium owners may bring an action against the association for damages caused by negligent maintenance of the common areas in the condominium project. In contesting the propriety of such an action defendant association argues that because it is a joint enterprise each member is both principal and agent for every other member, and consequently the negligence of each member must be imputed to every other member. Hence, its argument goes, a member may not maintain an action for negligence against the association because the member himself shares responsibility as a principal for the negligence of which he complains. (6 Am.Jur.2d, Associations and Clubs, § 31.)

We first consider the present status of an unincorporated association's liability in tort to its members. In *Marshal* v. *International Longshoremen's & Warehousemen's Union,* 57 Cal.2d 781 [22 Cal.Rptr. 211, 371 P.2d 987], the court ruled that a member of a labor union organized as an unincorporated association could sue the union for negligent acts which the member had neither participated in nor authorized. The court said: "Under traditional legal concepts the partnership is regarded as an aggregate of individuals with each partner acting as agent for all other partners in the transaction of partnership business, and the agents of the partnership acting as agents for all of the partners. When these concepts are transferred bodily to other forms of voluntary associations such as fraternal organizations, clubs and labor unions, which act normally through elected officers and in which the individual members have little or no authority in the day-to-day operations of the association's affairs, reality is apt to be sacrificed to theoretical formalism. The courts, in recognition of this fact, have from case to case gradually evolved new theories in approaching the problems of such associations, and there is now a respectable body of judicial decision, especially in the field of labor-union law, with which we are here directly concerned, which recognizes the existence of unincorporated labor unions as separate entities for a variety of purposes, and which recognizes as well that the individual members of such unions are not in any true sense principals of the officers of the union or of its agents and employees so as to be bound personally by their acts under the strict application of the doctrine of *respondeat superior.*"

In effect, the court found that the traditional immunization of an unincorporated association from liability in tort to its members rested on two supports: (1) an unincorporated association lacks a legal existence separate from its members; (2) each member exercises control over the operations of the association. But the court observed that these supports no longer carried the persuasiveness they once did, and it quoted from its opinion in

*DeMille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, 149 [187 P.2d 769]: "The member and the association are distinct. The union represents the common or group interests of its members, as distinguished from their personal or private interest. 'Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity.This difference is as well defined as that existing between individual members of the union.' (*United States* v. *White,* 322 U.S. 694, at page 701 [88 L.Ed. 1542, 64 S.Ct. 1248, 152 A.L.R. 1202].)" The court then concluded that a union could be held liable in tort for negligence to a member. But it specifically limited the application of its ruling to labor unions, declaring it would leave "to future development the rules to be applied in the case of other types of unincorporated associations." (57 Cal. 2d at 787, fn.1.)

Since *Marshall* in 1962 the rule of non-liability of an unincorporated association to its members has suffered further erosion from both statutory and case law. Under amendments to the Corporations Code in 1967 an unincorporated association, defined as "any partnership or other unincorporated organization of two or more persons" (§ 24000), has been made liable to third persons to the same extent as if the association were a natural person (§ 24001),[2] its property (but not the property of its members) may be levied upon by writ of execution to enforce a judgment against the association (§ 24002), and a system has been created for the designation of agents for service of process (§§ 24003-24007). An unincorporated association may own property (§§ 21200-21201), protect its name and insignia (§§ 21300-21310), engage in commercial ventures (Com. Code, § 1201, subds. 28, 30), and engage in labor activities (Lab. Code, § 1117). Members of nonprofit unincorporated associations remain free from liability for the association's debts incurred in acquiring real property. (Corp. Code, § 21100.)

Since 1962 the trend of case law has flowed toward full recognition of the unincorporated association as a separate legal entity. A member of an unincorporated association does not incur liability for acts of the association or acts of its members which he did not authorize or perform. (*Orser* v. *George,* 252 Cal.App.2d 660, 670-671 [60 Cal.Rptr. 708].) A partner in a business partnership has been allowed to maintain an action against the partnership for the loss of his truck as a result of partnership negligence. (*Smith* v. *Hensley* (Ky.) 354 S.W.2d 744 [98 A.L.R.2d 340].) In the

---

[2]Section 24001, subdivision (a) declares that an unincorporated association is liable to non-members for an act or omission of its agents. Section 24001, subdivision (b) adds: "Nothing in this section in any way affects the rules of law which determine the liability between an association and a member of the association."

latter case the court declared that the doctrine of imputed negligence, which would normally bar a partner's recovery against the partnership, was an artificial rule of law which should yield to reason and practical considerations; since the partnership would have been liable for damages to the property of a stranger, no just reason existed for denying recovery for damages to the property of a partner. In affirming a judgment for plaintiff the court said: ". . . under a realistic approach, seeking to achieve substantial justice, the plaintiff should be held entitled to maintain the action."

In view of these developments over the past decade we conclude that unincorporated associations are now entitled to general recognition as separate legal entities and that as a consequence a member of an unincorporated association may maintain a tort action against his association.

Does this general rule of tort liability of an unincorporated association to its members apply in the specific instance of a condominium? A brief review of the statutory provisions which sanction and regulate the condominium form of ownership will clarify the nature of what we are dealing with. A *condominium* is an estate in real property consisting of an undivided interest in common in a portion of a parcel of real property together with a separate interest in another portion of the same parcel. (Civ. Code, § 783.) A *project* is the entire parcel of property, a *unit* is the separate interest, and the *common areas* are the entire project except for the units. (Civ. Code, § 1350.) Transfer of a unit, unless otherwise provided, is presumed to transfer the entire condominium. (Civ. Code, § 1352.) Ownership is usually limited to the interior surfaces of the unit, a cotenancy in the common areas, and nonexclusive easements for ingress, egress, and support. (Civ. Code, § 1353.) Typically, a condominium consists of an apartment house in which the units consist of individual apartments and the common areas consist of the remainder of the building and the grounds. Individual owners maintain their own apartments, and an association of apartment owners maintains the common areas. The association obtains funds for the care of the common areas by charging dues and levying assessments on each apartment owner.

The original project owner must record a condominium *plan* (Civ. Code, § 1351), and restrictions in the plan become enforcible as equitable servitudes (Civ. Code, § 1355). The plan may provide for management of the project by the condominium owners, by a board of governors elected by the owners, or by an elected or appointed agent. Management may acquire property, enforce restrictions, maintain the common areas, insure the owners, and make reasonable assessments. (Civ. Code, §§ 1355, 1358.) Only under exceptional circumstances may the condominium project be partitioned. (Civ. Code, § 1354; Code Civ. Proc., § 752b.) Zoning ordinances

must be construed to treat condominiums in like manner as similar structures, lots, or parcels. (Civ. Code, § 1370.) Condominium projects with five or more condominiums are subject to rules regulating subdivided lands and subdivisions. (Bus. & Prof. Code, §§ 11004.5, 11535.1.) Individual condominiums are separately assessed and taxed. (Rev. & Tax. Code, § 2188.3.) Savings and loan associations may lend money on the security of condominium real property. (Fin. Code, § 7153.1.)

California's condominium legislation parallels that of other jurisdictions (see Ferrer & Stecher, Law of Condominium (1967)), and a review of this legislation brings out the two different aspects of the typical condominium scheme. (1) Operations. These are normally conducted by a management association created to run the common affairs of the condominium owners. The association functions in a manner comparable to other unincorporated associations in that it is controlled by a governing body, acts through designated agents, and functions under the authority of by-laws, etc. (the plan). In this aspect of the condominium scheme the management association of condominium owners functions as a distinct and separate personality from the owners themselves. (2) Ownership. In its system of tenure for real property the condominium draws elements both from tenancy in common and from separate ownership. Tenancy in common has also been brought into the structure of the managment association, for under Civil Code section 1358 the management association holds personal property in common for the benefit of the condominium owners. In a formal sense, therefore, the condominium owners are tenants in common of the common areas and the personal property held by the management association, and they are owners in fee of separate units, which are not separate in fact. It is apparent that in its legal structure the condominium first combines elements from several concepts — unincorporated association, separate property, and tenancy in common — and then seeks to delineate separate privileges and responsibilities on the one hand from common privileges and responsibilities on the other. At this juncture we return to the tests used in *Marshall* to determine the tort liability of an association to its members and pose two questions. Does the condominium association possess a separate existence from its members? Do the members retain direct control over the operations of the association?

Our answer to the first question derives from the nature of the condominium and its employment of the concept of separateness. Were separateness not clearly embodied within the condomium project the unit owners would become tenants in common of an estate in real property and remain exposed to all the consequences which flow from such a status. We think the concept of separateness in the condominium project carries over

to any management body or association formed to handle the common affairs of the project, and that both the condominium project and the condominium association must be considered separate legal entities from its unit owners and association members.

For answer to our second question we turn to the statutory scheme, whence it clearly appears that in ordinary course a unit owner does not directly control the activities of the management body set up to handle the common affairs of the condominium project. To illustrate from the facts at bench: White owns his individual unit and a one-sixtieth interest in the common areas of Merrywood. An administrator controls the common affairs of Merrywood and maintains the common area where White tripped over the sprinkler. The administrator is appointed by and responsible to a board of governors. The board of governors is elected by the unit owners in an election in which each owner has one vote, owners vote by proxy, and cumulative voting is allowed. White is not a member of the board of governors. The Merrywood condominium plan succinctly warns, "In case management is not to your satisfaction, you may have no recourse." To use the language of the *Marshall* opinion, we would be sacrificing reality to theoretical formalism to rule that White had any effective control over the operation of the common areas of Merrywood, for in fact he had no more control over operations than he would have had as a stockholder in a corporation which owned and operated the project.

█  With respect to the elements deemed critical in *Marshall* we find no substantial distinction between a condominium and a labor union. A condominium, like a labor union, has a separate existence from its members. Control of a condominium, like control of a labor union, is normally vested in a management body over which the individual member has no direct control. We conclude, therefore, that a condominium possesses sufficient aspects of an unincorporated association to make it liable in tort to its members. The condominium and the condominium association may be sued in the condominium name under authority of section 388 of the Code of Civil Procedure. The condominium and the condominium association may be served in the statutory manner provided for service on an unincorporated association (Corp. Code, §§ 24003-24007), and individual unit owners need not be named or served as parties in a negligence action against the condominium and the condominium association.[3]

[3]We express no opinion on what property execution may be levied to satisfy a judgment against the condominium and the condominium association. With reference to liens for labor, services, or materials, the last sentence of Civil Code section 1357 reads: "The owner of any condominium may remove his condominium from a lien against two or more condominiums or any part thereof by payment to the holder of

We conclude (1) the condominium association may be sued for negligence in its common name, (2) by a member of the association, (3) who may obtain a judgment against the condominium and the condominium association.

The judgment of dismissal is reversed.

Compton, J., concurred.

**ROTH, P. J.**—I concur.

I agree that a member of an unincorporated association of condominium owners may sue the association in tort. (Code Civ. Proc., § 388.) However, the majority opinion fails to define or distinguish the extent to which individual unit owners in a condominium project may become liable to another unit owner or to a third person for tortious conduct arising in the common areas of the condominium project. In footnote 3, the majority declines to hold on "what property execution may be levied to satisfy a judgment against the condominium and the condominium association."

When as at bench a judgment of dismissal entered after a demurrer without leave to amend has been sustained the question of levy of execution may not be properly before this court. However, the question of the identities of the parties liable is not settled in this case[1] nor is the basis of the liability of parties other than the association, to wit, Merrywood Apartments.

the lien of the fraction of the total sum secured by such lien which is attributable to his condominium."

It could be implied from the sense of the section that a condominium owner may satisfy his portion of any liability arising out of the operation of the condominium project by the payment of his proportionate share of the liability. Such a conclusion would conform to what has been written on the subject by text writers (Rohan and Reskin, Condominium Law and Practice (1970), ch. 10A, and 4 Powell on Real Property, § 633.25), and parallels what has been achieved by statute in other states. Alaska, Massachusetts, and Washington provide that a cause of action in tort relating to the common areas may be maintained only against the association of apartment owners. A judgment lien becomes a common expense and is removed from an individual condominium upon payment by the individual owner of his proportionate share. (Alaska Stat., tit. 34, § 34.07.260; Annot. Laws of Massachusetts, ch. 183A, § 13; Rev. Code of Washington Annot., § 64.32.240.) District of Columbia, Idaho, and Maryland provide more generally that any judgment lien against two or more condominium owners may be removed from an individual condominium upon payment by the condominium owner of his proportionate share. (Dist. of Columbia Code Encyclopedia, § 5-924(c); Idaho Code, § 55-1515; Annot. Code of Maryland, art. 21, § 138.) In contrast is Mississippi, whose code declares that individual owners have no personal liability for damages caused by the governing body or connected with use of the common area. (Miss. Code Annot., § 896-15.)

[1] In addition to Merrywood Apartments, the complaint named Does I through X as defendants.

The ownership of the common areas in a condominium project is vested in the individual unit owners as tenants in common. (Civ. Code, § 1353, subd. (b).) Thus, even though, as the majority holds, the association may be sued in its separate name, it is apparent that the legal owners of the common areas are not immunized from liability by virtue of the mere existence of the association.

A comparative study of California condominium legislation with that in other states shows that the question of the individual unit owner's tort liability in cases arising in the common areas has not been regulated by statute. The majority's suggestion that section 1357 of the Civil Code, in providing for the aliquot satisfaction of liens for labor, services, or materials, also provides for the distribution of tort liability among the owners is too great a strain on the expressly limited wording of that code section. This suggestion has been questioned by at least one commentator (Comment, 77 Harv.L.Rev. 777, 780, fn. 24) and it does not square with the fact that California has followed the lead of most states and failed to provide adequate regulation or protection of the individual owner's interests in the case of torts arising from the common areas. (See Rohan, *Perfecting the Condominium as a Housing Tool: Innovations in Tort Liability and Insurance* (1967), 32 Law & Contemp. Prob. 305, 308; Kerr, *Condominium— Statutory Implementation* (1963), 28 St. John's L.Rev. 1, 42-43; Comment, *supra,* 77 Harv.L.Rev. 777, 780.) The absence of an express statutory scheme for the re-distribution of tort liability, such as those found in the Alaska, Massachusetts and Washington legislation, is ample warning that the problem of protecting the individual unit owner from tort liability which, it should be noted, may exceed the value of his unit[2] (whether it be to another unit owner or to a third person) is yet an open question in California.

One practical answer is, of course, insurance taken out by the association to cover liability in respect of the common areas. (See Kerr, *supra,* at p. 43.)[3] It might then be argued depending on the terms of the written declaration between unit owners that, at least as between suing and defendant unit owners, the maximum amount of liability of defendant unit owners has been contractually limited to the maximum of the insurance taken out by the association.

---

[2]Thus, in California, the co-owners may have to respond for injuries arising out of the common areas in terms of the *personal* tort liability of tenants in common, which according to the common law and our statutory law results in joint and several liability. (Code Civ. Proc., § 384; 86 C.J.S. Tenancy in Common, § 143.)

[3]In California, the governing body of a condominium project may obtain insurance on behalf of, and for the benefit of condominium owners. (Civ. Code, § 1355, subd. (b) (2).)

At bench we have the declaration upon which the project at bench is grounded before us *only* insofar as its terms are reflected by the permit of the Commissioner of Corporations.

The permit, after setting forth the plan of management and powers of the board of governors, sets forth in pertinent part that the board of governors shall have the power to: "Contract and/or pay for fire, casualty, liability and other insurance and bonding of its members, maintenance, gardening, utilities, materials, supplies, services and personnel necessary for the operation of the project, taxes and assessments which may become a lien on the entire project or the common area, and reconstruction of portions of the project which are to be rebuilt after damage or destruction;"

The above excerpt or summary (in the permit) from the declaration is substantially similar to the powers set forth in section 1355, subdivision (b)(2) of the Civil Code, which empowers the board of governors to obtain ". . . fire, casualty, liability, workmen's compensation and other insurance insuring condominium owners, and for bonding of the members of any management body;"

It occurs to me, therefore, on the limited record before this court that each unit holder of the project has *by contract* delegated to the board of governors which operates the project the power and responsibility to obtain adequate liability insurance for the project to cover claims of third persons and also adequate insurance to cover negligence actions of unit owners against the association and actions which any unit owner might bring against other unit owners because of the negligence of the association.

It seems to me therefore that any failure by management to obtain adequate insurance or any insurance leaves a unit holder injured by negligence of management, (as distinguished from independent negligence of a fellow unit owner) with the right to proceed against the association to the extent of its insurance if any and with no right to proceed against other unit owners. A suit by one other than a unit owner is a question not raised by the litigation at bench, and cannot be similarly circumscribed. Generally, tenants in common may be joined as defendants and their liability is joint and several (Code Civ. Proc., § 384), and the apportionment of liability as between unit owners is, of course, a difficult and vexing question. (See generally, 86 C.J.S.2d, Tenancy in Common, § 143.)

A petition for a rehearing was denied June 21, 1971, and respondent's petition for a hearing by the Supreme Court was denied July 21, 1971.