**J.A. DUTCHER, Petitioner,**

v.

**Ted OWENS, et ux., Respondents.**

**No. C–1473.**

Supreme Court of Texas.

March 23, 1983.

Rehearing Denied April 20, 1983.

Thompson, Coe, Cousins & Irons, Russell W. Schell, Dallas, for petitioner.

Jacobs, Taylor & Cocanower, Steven Cocanower, Fort Worth, for respondents.

RAY, Justice.

This is a case of first impression concerning the allocation of liability among condominium co-owners for tort claims arising out of the ownership, use and maintenance of "common elements." The defendant was found to be vicariously liable for the homeowners' association's negligence. The trial

court ordered that the plaintiffs recover from the defendant an amount based upon the defendant's proportionate ownership in the condominium project. The court of appeals reversed in part the judgment of the trial court, holding "that each unit owner, as a tenant in common with all other unit owners in the common elements, is jointly and severally liable for damage claims arising in the common elements." 635 S.W.2d 208, 211. We reverse the judgment of the court of appeals and affirm the trial court's judgment.

J.A. Dutcher, a resident of San Diego, California, owned a condominium apartment in the Eastridge Terrace Condominiums, located in Dallas County, which he leased to Ted and Christine Owens. Ownership of the apartment includes a 1.572% *pro rata* undivided ownership in the common elements of the project. The Owenses suffered substantial property loss in a fire which began in an external light fixture in a common area.

The Owenses filed suit in Tarrant County against Dutcher, the Eastridge Terrace Condominium Association, Joe Hill Electric Company, IHS–8 Ltd..(the developer) and a class of co-owners of condominiums in Eastridge Terrace represented by the officers of the homeowners' association. All defendants with the exception of Dutcher obtained a change of venue to Dallas County. The case was tried before a jury, which found the following:

(1) The fire was proximately caused by the lack of an insulating box behind the light fixture in the exterior wall air space;

(2) The homeowners' association knew of this defect;

(3) The homeowners' association alone was negligent in failing to install an insulating box with knowledge of the defect; and

(4) The negligence of homeowners' association resulted in damage to the Ow-

ens' property in the amount of $69,-150.00.

The trial court rendered judgment against Dutcher on the jury's verdict in the amount of $1,087.04. The award represents the amount of damages multiplied by Dutcher's 1.572% *pro rata* undivided ownership in the common elements of the Eastridge Terrace Condominium project.

By an agreed statement of facts filed with the court of appeals, the parties stipulated that the sole issue for determination on appeal was whether a condominium co-owner is jointly and severally liable or is liable only for a *pro rata* portion of the damages. Tex.R.Civ.P. 377(d).

■ In enacting the Texas Condominium Act (the Act), Tex.Rev.Civ.Stat.Ann. art. 1301a, the Texas Legislature intended to create "a new method of property ownership."[1] 1963 Tex.Gen.Laws, Ch. 191, § 26 at 512. A condominium is an estate in real property consisting of an undivided interest in a portion of a parcel of real property together with a separate fee simple interest in another portion of the same parcel. In essence, condominium ownership is the merger of two estates in land into one: the fee simple ownership of an apartment or unit in a condominium project and a tenancy in common with other co-owners in the common elements. *Scott v. Williams,* 607 S.W.2d 267, 270 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); Tex.Rev.Civ.Stat. Ann. art. 1301a; *see also White v. Cox,* 17 Cal.App.3d 824, 95 Cal.Rptr. 259, 45 A.L. R.3d 1161 (1971); Comment, "The Condominium and the Corporation—A Proposal for Texas," 11 Hous.L.Rev. 454 (1974).

"General common elements" consist of, *inter alia,* the land upon which the building stands, the "foundations, bearing walls and columns, roofs, halls, lobbies, stairways, and entrances and exits or communication ways; ... [a]ll other elements of the build-

1. Condominium ownership is a tenure unknown at common law. Provisions for a form of condominium ownership can be found in the Roman civil law and the Napoleonic Code. 4B *Powell on Real Property* (Part III) ¶¶ 599, 633.1 *et seq.* (1976).

ing desirable or rationally of common use or necessary to the existence, upkeep and safety of the condominium regime, and any other elements described in the declaration . . . ." Tex.Rev.Civ.Stat.Ann. art. 1301a, § 2(*1*), subsections (1), (2) & (7). An individual apartment cannot be conveyed separately from the undivided interest in the common elements and *vice versa. Id.* § 9.

A condominium regime must be established according to the Act. The declaration must be filed with the county clerk, who must record the instrument in the Condominium Records. Once the declarant has complied with the provisions of the Act, each apartment in the project is treated as an interest in real property. *Id.* §§ 3, 4, & 7. Administration of the regime is established by the Act. *Id.* §§ 13, 14 & 15.

The condominium association or council is a legislatively created unincorporated association of co-owners having as their common purpose a convenient method of ownership of real property in a statutorily created method of ownership which combines both the concepts of separateness of tenure and commonality of ownership. The California Supreme Court has concluded that "the concept of separateness in the condominium project carries over to any management body or association formed to handle the common affairs of the project, and that both the condominium project and the condominium association must be considered separate legal entities from its unit owners and association members." *White v. Cox,* 95 Cal.Rptr. at 262.

Given the uniqueness of the type of ownership involved in condominiums, the onus of liability for injuries arising from the management of condominium projects should reflect the degree of control exercised by the defendants. We agree with the California court's conclusion that to rule that a condominium co-owner had any effective control over the operation of the common areas would be to sacrifice "reality

to theoretical formalism," for in fact a co-owner has no more control over operations than he would have as a stockholder in a corporation which owned and operated the project. *White v. Cox,* 95 Cal.Rptr. at 263. This does not limit the plaintiff's right of action. The efficiency found in a suit directed at the homeowners' association and its board of directors representing the various individual homeowners, as well as any co-owner causally or directly responsible for the injuries sustained, benefits both sides of the docket as well as the judicial system as a whole.

Such a result is not inconsistent with the legislative intent. While the Act creates a new form of real property ownership, it does not address the issue of the allocation of tort liability among co-owners. Nevertheless, we are guided in our decision by the other provisions in the Act which appear *in pari materia,* and which proportionately allocate various financial responsibilities. For example, the Act provides for *pro rata* contributions by co-owners toward expenses of administration and maintenance, insurance, taxes and assessments. *Pro rata* provisions also exist for the application of insurance proceeds. Tex.Rev.Civ.Stat.Ann. art. 1301a, §§ 15, 18, 19, & 20.

Respondents have cited us to two bills submitted in the legislature in 1981.[2] The bills, which did not pass, included provisions for re-apportionment of liability on a *pro rata* basis. Inasmuch as each bill involved a complete revision of the Act, we cannot draw inferences of the legislature's intent from the failure of the bills to pass. Any such inference would involve little more than conjecture. The legislative history of the Act is so scant that the most that can be said is that the Act is silent as to the matter, and hence the legislative intent is unknown. *Cf. Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968).

■ The theories of vicarious and joint and several liability are judicially created

2. House Bills 439 and 2233.

vehicles for enforcing remedies for wrongs committed. Justified on public policy grounds, they represent a deliberate allocation of risk. *See Newspapers, Inc. v. Love,* 380 S.W.2d 582, 588–89 (Tex.1964); *Landers v. East Texas Salt Water Disposal Co.,* 151 Tex. 251, 248 S.W.2d 731, 733 (1952); W. Prosser, *Law of Torts,* § 69 at 459 (4th ed. 1971).

Texas follows the rule that statutes in derogation of the common law are not to be strictly construed. Tex.Rev.Civ. Stat.Ann. art. 10, § 8. Nevertheless, it is recognized that if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969); *see also* 3 C. Sands, *Sutherland Statutory Construction* § 61.02 (4th ed. 1973). Since the Act is silent as to tort liability, we are dealing with rights and liabilities which are not creatures of statute but with the common law, which is our special domain. Hence, the rule we have reached is not a usurpation of the legislative prerogative. To the contrary, it is one reached in the public interest.

We hold, therefore, that because of the limited control afforded a unit owner by the statutory condominium regime, the creation of the regime effects a reallocation of tort liability. The liability of a condominium co-owner is limited to his *pro rata* interest in the regime as a whole, where such liability arises from those areas held in tenancy-in-common. The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.