BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE CHARLENE GONZALES ZETTEL, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
Is a development created in 1972 which was recorded under "a map of a condominium project" and granted a special use permit by the county "for a Planned Residential Development which is a condominium," where the residents own separate lots and an undivided interest in the lot constituting the common area, a "condominium project" or a "planned development" for purposes of California law?
 CONCLUSION
A development created in 1972 which was recorded under "a map of a condominium project" and granted a special use permit by the county "for a Planned Residential Development which is a condominium," where the residents own separate lots and an undivided interest in the lot constituting the common area, is a "planned development" for purposes of California law.
 ANALYSIS
The Davis-Stirling Common Interest Development Act (Civ. Code §§1350-1376; "Act")[1] governs the creation and management of condominium projects, planned developments, and certain other common interest developments. (§§ 1351, subd. (c), 1352.) The Act's provisions apply not only to common interest developments created since 1985 when the Act was enacted (Stats. 1985, ch. 874, § 14) but also to those developments created prior to 1985. (Nahrstedt v. Lakeside Village Condominium Assn. (1994) 8 Cal.4th 361, 378, fn. 8.)
The question presented for resolution is whether a development project created in 1972 which was recorded under a "map of a condominium project" and granted a special use permit by the county "for a Planned Residential Development which is a condominium," where the residents own separate lots and an undivided interest in the lot constituting the common area, is to be considered a "condominium project" or a "planned development" for purposes of the Act. We conclude that it is to be considered a "planned development."
Provided that certain documents are recorded, a "common interest development" is created whenever a separate interest coupled with an interest in a common area or membership in an association is, or has been, conveyed. (§ 1352.) The "common area" is the entire common interest development except the separate interests therein (§1351, subd. (b)); a development subject to the Act must have a common area (§ 1374). The "association" is a nonprofit corporation or unincorporated association created for the purpose of managing the common interest development. (§ 1351, subd. (a).)
The Act is a consolidation of several statutory provisions governing common interest developments, and its enactment was intended by the Legislature to standardize the treatment of such developments. (See Nahrstedt v. Lakeside Village Condominium Assn., supra, 8 Cal.4th at pp. 377-378; Sproul Rosenberry, Advising Cal. Condominium and Homeowners Associations (Cont.Ed.Bar. 1991), § 1.15, p. 16.) As the rights and responsibilities of a development's association and homeowners are largely determined by the governing documents,[2] in most cases the consequences of whether a common interest development has been created as a condominium project or a planned development are limited. (See, e.g., §§ 1361, 1362, 1364.)
Looking at the relevant definitional provisions of the Act, we find that section 1351, subdivision (f), defines a "condominium project" as follows:
 "A `condominium project' means a development consisting of condominiums. A condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit, the boundaries of which are described on a recorded final map, parcel map, or condominium plan in sufficient detail to locate all boundaries thereof. The area within these boundaries may be filled with air, earth, or water, or any combination thereof, and need not be physically attached to land except by easements for access and, if necessary, support. The description of the unit may refer to (1) boundaries described in the recorded final map, parcel map, or condominium plan, (2) physical boundaries, either in existence, or to be constructed, such as walls, floors, and ceilings of a structure or any portion thereof, (3) an entire structure containing one or more units, or (4) any combination thereof. The portion or portions of the real property held in undivided interest may be all of the real property, except for the separate interests, or may include a particular three-dimensional portion thereof, the boundaries of which are described on a recorded final map, parcel map, or condominium plan. The area within these boundaries may be filled with air, earth, or water, or any combination thereof, and need not be physically attached to land except by easements for access and, if necessary, support. An individual condominium within a condominium project may include, in addition, a separate interest in other portions of the real property."
In a condominium project, "separate interest" means an individual unit, as specified in section 1351, subdivision (f). (§ 1351, subd. (l)(2).) Thus, "[a] project is the entire parcel of property, a unit is the separate interest, and the common areas are the entire project except for the units." (White v. Cox (1971) 17 Cal.App.3d 824,828.) "Ownership is usually limited to the interior surfaces of the unit, a co-tenancy in the common areas, and nonexclusive easements for ingress, egress, and support." (Ibid.; see §§ 1351, subd. (l), 1361, 1362.)
In contrast, a "planned development" is defined in section 1351, subdivision (k), as follows:
 "`Planned development' means a development (other than a community apartment project, a condominium project, or a stock cooperative) having either or both of the following features:
 "(1) The common area is owned either by . . . the association or in common by the owners of the separate interests who possess appurtenant rights to the beneficial use and enjoyment of the common area.
 "(2) A power exists in the association to enforce an obligation of an owner of a separate interest with respect to the beneficial use and enjoyment of the common area by means of an assessment which may become a lien upon the separate interests in accordance with Section 1367."
In a planned development, "separate interest" means a separately owned lot, parcel, area, or space. (§§ 1351, subd. (l)(3).) A planned development can look like a condominium project, but in a planned development the owner owns a lot and the community association owns the common area. (Sproul Rosenberry, supra, § 1.15, p. 16.) Planned developments may, however, include developments in which an individual owner owns both a lot and a proportional share of the common area. (Ibid.; see § 1362 ["Unless the declaration otherwise provides, in a condominium project, or in a planned development in which the common areas are owned by the owners of the separate interests, the common areas are owned as tenants in common, in equal shares, one for each unit or lot"].) California law is unique in this respect. (Sproul Rosenberry, supra, § 1.18, p. 19.)
The basic differences between condominium projects and planned developments have been described as follows:
 "Unlike the condominium project, which is essentially a creature of statutory origin, the planned development uses traditional real property concepts. In a planned development, ownership includes an individual interest in a parcel of land, usually a subdivision lot, and the structural improvements situated on the lot. In contrast, the condominium owner receives title primarily to a cube of airspace [citation] without receiving undivided ownership of any underlying land or structural improvements as part of the individual ownership. In a condominium project, the land and structures are common area. The common area in a planned development is often owned by the owners association, though it may be held in undivided interests, whereas in a condominium project, at least some portion of the common area must be owned in undivided interests. [Citations.]" (Cal. Condominium and Planned Development Practice (Cont.Ed.Bar (1984) § 1.19, p. 26.)
Turning to the particular development in question that was created in 1972, we first note that the descriptions of the development as a "condominium project" on the final subdivision map and as "a Planned Residential Development which is a condominium" on the county's special use permit are consistent with the developer's intent to create a condominium project. However, and more importantly, the residents of the development own separate lots, as shown on the final map, and a proportional undivided interest in the common area. Ownership of separate lots within a development is not indicative of a condominium project.
A condominium owner has a "separate interest in space called a unit," and the boundaries thereof must be "described on a recorded final map, parcel map, or condominium plan in sufficient detail to locate" them. (§ 1351, subd. (f).) The Act contemplates that the boundaries of the interests in a condominium project will be described on a condominium plan filed pursuant to its provisions. (73 Ops.Cal.Atty.Gen. 312, 314 (1990).) Under the circumstances presented, units "in space" have not been described because the lot lines appearing on the final map are only two-dimensional. Hence, for purposes of the Act, the development in question is not a condominium project but rather a planned development.
Our interpretation of the Act's provisions is consistent with the requirements of prior law. In 1972, when the development in question was created, a condominium was statutorily described as an undivided interest in common "together with a separate interest in space" (Stats. 1965, ch. 988, §§ 1, 2), while a planned development was described as "lots, parcels or areas owned in common by the owners of the separately owned lots, parcels or areas" (Stats. 1969, ch. 275, § 1). A condominium created in 1972 required the recordation of a condominium plan that included "diagrammatic floor plans of the building or buildings built or to be built thereon in sufficient detail to identify each unit." (Stats. 1963, ch. 860, § 3.) Here, no such diagrammatic floor plans were recorded for the project. Accordingly, this particular development was not a condominium project under California law at the time it was created in 1972.[3]
We conclude that a development created in 1972 which was recorded under "a map of a condominium project" and granted a special use permit by the county "for a
Planned Residential Development which is a condominium," where the residents own separate lots and an undivided interest in the lot constituting the common area, is a planned development for purposes of California law.
[1] All further statutory references are to the Civil Code.
[2] Section 1351, subdivision (j) defines "governing documents" as "the declaration and any other documents, such as bylaws, operating rules of the association, articles of incorporation, or articles of association, which govern the operation of the common interest development or association."
[3] Significantly, the governing documents for the development in question refer to the separate ownership interests in terms of "lots" rather than "condominiums."