# IN THE SUPREME COURT OF TEXAS

No. 13-0338

UNIVERSITY OF TEXAS AT ARLINGTON, PETITIONER,

v.

SANDRA WILLIAMS AND STEVE WILLIAMS, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

JUSTICE BOYD, concurring.

Legend has it that Midas secured his father's ox cart to a hitching post in ancient Phrygia using a knot that only the future king of all of Asia could untie. The insoluble Gordian Knot held fast for centuries, and even Alexander the Great could not unwind its woven strands of bark.[1] I think Midas would have been quite proud of the Texas recreational use statute and its definition of the word "recreation." TEX. CIV. PRAC. & REM. CODE §§ 75.001(3), .002(e).

---

[1] *See, e.g., Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 154 F.3d 812, 818 n.3 (8th Cir. 1998) (citing FUNK AND WAGNALLS STANDARD DICTIONARY OF FOLKLORE, MYTHOLOGY, AND LEGEND 460 (Maria Leach ed., Funk & Wagnalls 1972) and BULFINCH'S MYTHOLOGY 44 (Richard P. Martin ed., 1991)); Carl Michael Szabo, *Thwack!! Take That, User-Generated Content!: Marvel Enterprises v. NCSoft*, 62 FED. COMM. L. J. 541, 543 n.6 (2010) (citing Lynn E. Roller, *Midas and the Gordian Knot*, 3 CLASSICAL ANTIQUITY 256 (1984)); Jim Chen, *The Midas Touch*, 7 MINN. J. L. SCI. & TECH. i nn.1–2 (2005) (citing THOMAS BULFINCH, BULFINCH'S MYTHOLOGY: ILLUSTRATED EDITION 46–48 (1979) and 2 W.W. TARN, ALEXANDER THE GREAT 262 (1948)); Joseph H. King, Jr., *The Misbegotten Libel-Proof Plaintiff Doctrine and the "Gordian Knot" Syndrome*, 29 HOFSTRA L. REV. 343, 343–44 (2000) (citing Zbigniew Herbert, *The Gordian Knot*, KENYON REV. 34 (Summer 1984) (John Carpenter & Bogdana Carpenter trans.)); Edward J. Imwinkelried, *The Gordian Knot of the Treatment of Secondhand Facts Under Federal Rule of Evidence 703 Governing the Admissibility of Expert Opinions: Another Conflict Between Logic and Law*, 3 U. DENV. CRIM. L. REV. 1, 28 (2013) (citing JOHN MAXWELL O'BRIEN, ALEXANDER THE GREAT: THE INVISIBLE ENEMY: A BIOGRAPHY 69 (1992)).

The Court makes a valiant effort to determine what qualifies under the statute as "any other activity associated with enjoying nature or the outdoors." *Id*. § 75.001(3)(L). For the reasons JUSTICE DEVINE explains in the plurality opinion, I agree that the doctrine of *ejusdem generis* requires us to construe that phrase to include only activities that are "similar in type" to the specific activities the statute lists. *Ante* at ___. But the plurality never defines what that "type" is, nor can it, because it is not possible to fit all of the listed activities into any particular "type." I agree with JUSTICE JOHNSON that we cannot say, as the plurality seems to suggest, that the "type" of activities listed are only those that:

- use the property "in its natural state," *ante* at ___, because the statute expressly defines "premises" to include "buildings" and "structures"[2] and lists several activities that often involve improvements like pools (swimming), cabins (camping), ramps (boating), tables (picnicking), and roads ("pleasure driving" and bicycling);[3]

- are not a sport, or a team sport, or even a competitive team sport, *ante* at ___, because the list includes several activities that can be all of these, like fishing, swimming, boating, water sports, bicycling, and disc golf;[4]

- do not involve "spectating," *ante* at ___, because the list includes "bird-watching" and other activities in which much of the enjoyment often derives from what the participant observes, like boating, camping, picnicking, hiking, pleasure driving, and cave exploration;[5] or

- focus on "that part of the physical world that is removed from human habitation," *ante* at __, as opposed to a "celebration of organized human activity," *ante* at __, because the list includes activities that are often enjoyed among groups of people and in areas where people live and gather, like dog-walking, hockey, and roller-skating.[6]

---

[2] TEX. CIV. PRAC. & REM. CODE § 75.001(2).

[3] *Id.* § 75.001(3)(C)–(F), (H), (M).

[4] *Id.* § 75.001(3)(B)–(D), (K), (M)–(N).

[5] *Id.* § 75.001(3)(D)–(J).

[6] *Id.* §§ 75.001(3)(O), 75.002(e)(1), (2).

Despite the plurality's admirable efforts, it is simply not possible to describe a "type" of activity that includes things as varied as swimming, disc golf, dog-walking, and hockey, but does not include every activity "associated with enjoying nature or the outdoors"—which would include spectating at an outdoor competitive sporting event.

I am therefore sympathetic to JUSTICE JOHNSON's conclusion that "[t]he Legislature has not specified that . . . the activities must be for enjoying the outdoors in limited, certain ways[.]" *Post* at ___. But I cannot reach that conclusion because it ignores both the rule of *ejusdem generis* and the reality that people can enjoy doing almost *anything* outdoors. Applying the rule of *ejusdem generis*, I cannot conclude that "recreation" includes eating on the patio at a local restaurant, walking from one store to the next at an outlet mall, or driving to work with the top down or windows open, even though "enjoyment of nature or the outdoors" is "integral to the enjoyment of th[e] activity." *Ante* at ___. Nor could I conclude that a person who "enjoys" mowing the lawn is engaged in "recreation" but a person who considers it to be an undesirable chore is not. Like the plurality, I conclude that the statute limits the meaning of "recreation," but like JUSTICE JOHNSON, I conclude that the statute provides no clear guidance as to what those limits are.

JUSTICE GUZMAN, meanwhile, would narrow our focus from the broader purpose of the outing to "the particular activity the plaintiff was engaging in at the time of the injury." *Ante* at ___. Although the plaintiff in this case was at a stadium to watch her daughter play soccer, she was actually injured "while attempting to acquire and sign forms authorizing a high school to release her daughter" after the game had ended. *Ante* at ___. Our decision in *City of Bellmead v. Torres* provides some support for JUSTICE GUZMAN's conclusion that we must focus on the more narrow activity, 89 S.W.3d 611, 614 (Tex.

3

2002), but the statute does not support her application of that principle here. In my view, JUSTICE GUZMAN's application of *Bellmead* ultimately ignores both the statute's reference to any activity "associated with" enjoying the outdoors and the reality that every "recreational" activity includes more mundane actions that are only "incident to" or "temporally related to," *ante* at ___, but may not themselves qualify as, "enjoying nature or the outdoors." I would conclude, for example, that a camper is still camping when he's walking to the park office to renew his permit to stay another night, a boater is still boating when she's tying the boat up to the dock, and a hunter is still hunting when he's climbing out of the blind to grab another drink from the cooler, even though these are only "temporally related," rather than "closely connected," and may "have no actual connection to an individual's enjoyment of nature or the outdoors." *Ante* at ___.

Each of my colleagues' opinions in this case represents a diligent and reasoned effort to make sense of the recreational use statute, but I ultimately conclude that the statute cannot be sensibly applied, at least without the aid of additional canons of statutory construction. Alexander the Great himself could not figure this one out. Instead, I suspect he would do what legend says he did with Gordian's Knot: he would unsheathe his sword and be done with it.[7]

Fortunately, we have a sword that is custom-made for a statute like this one. As we have repeatedly explained, "if a statute . . . deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield*, 448

---

[7] *See supra* note 1.

S.W.2d 456, 459 (Tex. 1969).[8] "Of course, statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended." *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007). Because statutes abrogating common law causes of action are disfavored, we will apply them only when there is "a clear repugnance between the common law and statutory causes of action." *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000).

As the plurality notes, the recreational use statute "effectively immunizes the landowner or occupant from ordinary negligence claims[.]" *Ante* at ___. Because the statute deprives invitees of their common law right to recover for injuries caused by a landowner's negligence, and instead permits them to recover only upon proof of gross negligence, malicious intent, or bad faith, *see* TEX. CIV. PRAC. & REM. CODE § 75.002(d), we must strictly construe it and apply it only to cases that are "*clearly* within its purview." *Satterfield*, 448 S.W.2d at 459 (emphasis added). As the Court's varying opinions here demonstrate, this case is not "clearly within [the] purview" of the statute. I would therefore hold that the statute does not apply. I would not hold, however, that the statute can *never* apply to a case involving an activity that the statute does not list as an example of "recreation." It may be, for example, that jogging, rock-climbing, or rappelling "clearly

---

[8] *See Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 64 (Tex. 2009); *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993); *Dutcher v. Owens*, 647 S.W.2d 948, 951 (Tex. 1983). JUSTICE JOHNSON declines to apply this canon of construction in part because no party has argued "a question of the . . . statute's constitutionality or the effect of its impairment of a common law right." *Post* at ___. But this canon does not apply only when there are constitutional challenges, and it is the proper practice of this Court to rely on applicable canons whenever we "cannot discern legislative intent in the language of the statute itself." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010). A party does not "waive" the applicability of a canon of construction by failing to raise it, and if our goal is to correctly determine the meaning of an ambiguous statute, we cannot refuse to rely on our guiding principles simply because no one asks us to do so.

[fits] within [the] purview" of an "activity associated with enjoying nature or the outdoors," as limited by the doctrine of *ejusdem generis*, but we cannot decide that issue here. What we must decide here is whether spectating at a soccer game or retrieving a child after the game fits that description, and since it does not do so clearly, I would hold that the statute does not apply.

I must address one final point, however, regarding a different "sword" that potentially clashes with the one I apply here. When, as here, the defendant is a governmental unit that enjoys sovereign immunity, *see Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 397 n.5 (Tex. 2001) ("State universities and their component entities are governmental entities within the meaning of the Texas Tort Claims Act."), the recreational use statute limits the scope of the Tort Claims Act's waiver of immunity. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021(2) (providing that governmental units are liable for "personal injury and death so caused by a condition or use of . . . real property"), 101.025(a) (waiving immunity "to the extent of liability created by this chapter"), 101.058 (providing that the recreational use statute controls "[t]o the extent that [it] limits the liability of a governmental unit under circumstances in which the governmental unit would be liable"). In this sense, the recreational use statute defines the extent of the waiver of immunity, and "[w]e have repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012). It could thus be argued that we should construe and apply the statute *broadly*, rather than narrowly, to minimize the extent of the statutory waiver and maximize the extent to which the governmental unit retains its immunity. *Cf. In re Smith*, 333 S.W.3d 582, 587 (Tex.

6

2011) (explaining that "a statutory waiver of sovereign immunity must be construed narrowly" and "must be clear and unambiguous") (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003); TEX. GOV'T CODE § 311.034).

I conclude, however, that the canon we announced in *Satterfield* prevails here for at least three reasons. First, we are construing the recreational use statute in this case, not the Tort Claims Act, and because the recreational use statute applies to all owners, lessees, and occupants of real property, including private parties as well as governmental units, *see* TEX. CIV. PRAC. & REM. CODE §§ 75.002(a), .003(c), its primary effect is to abrogate a common law cause of action. Creating an exception to the Tort Claims Act's waiver of sovereign immunity is only a secondary effect resulting from that Act's incorporation of the statute by reference. Second, the recreational use statute expressly states that it does not "create liability" or "waive immunity," and that it controls over any conflict with the Tort Claims Act. *See id.* § 75.003(d), (f). And third, in my view, the canon of construction that requires courts to narrowly construe a statute that waives immunity does not also require courts to broadly construe separate statutes that provide exceptions to the waiver as a secondary effect.

In summary, consistent with our well-established canons of construction, I would hold that the recreational use statute does not apply here because it deprives the claimant of a common law right and the claimant's activities at issue here are not "clearly within [the statute's] purview." I thus concur in the Court's judgment affirming the court of appeals' judgment, but for the different reasons I have explained.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: March 20, 2015.