[No. B187206. Second Dist., Div. Three. Mar. 13, 2007.]

ROBERT P. HEIMAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, UNINSURED
EMPLOYERS BENEFITS TRUST FUND et al., Respondents;
FREDDY AGUILERA, Real Party in Interest.

**COUNSEL**

Graiwer & Kaplan, Sherwin B. Conway and Susan Kaplan for Petitioner.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

Department of Industrial Relations, Vanessa L. Holton, Steven A. McGinty and David A. Warshaw for Respondent Uninsured Employers Benefits Trust Fund.

Grancell, Lebovitz, Stander, Barnes & Reubens and Penny C. Fogel for Respondents Robert Fisher, Regina Fisher and Eileen Kawas.

Malmquist, Fields & Camastra and Gregory L. Tanner for Respondent Stuart Pollard.

Law Offices of Berkowitz & Cohen and Elliott S. Berkowitz for Real Party in Interest.

## OPINION

**CROSKEY, Acting P. J.**—Petitioner, a professional property manager, hired an unlicensed and uninsured contractor to install rain gutters on a condominium building, and an employee of the contractor was seriously injured on the first day of the job. The Workers' Compensation Appeals Board (WCAB) concluded that petitioner was the employer liable for workers' compensation. Petitioner contends that the WCAB erred because petitioner was instructed to hire the unlicensed contractor as the agent of the condominium homeowners association or the condominium owners, which were found not liable for workers' compensation under the Labor Code.[1]

We conclude that petitioner and the unlicensed contractor were dual employers that are jointly and severally liable for workers' compensation. The unlicensed contractor employed the injured employee, and petitioner hired the unlicensed contractor as a professional property manager and the agent of the homeowners association. The homeowners association was not an owner or exempt employer under the Labor Code. Even if petitioner were the agent of the condominium owners, an agent may be liable for performing an act authorized by the principal whose rights are not imputed to the agent. Since liability for an agent's authorized act is imputed to the principal and the homeowners association was a legal entity separate from the owners, we further conclude that the liability of petitioner as agent is imputed to the homeowners association as principal.

---

[1] All statutory reference is to the Labor Code unless otherwise stated.

Accordingly, the WCAB's decision is affirmed in part and annulled in part, and the matter is remanded for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, Robert P. Heiman, individually, and doing business as Pegasus Properties (Pegasus), a property management business, entered into a condominium management agreement (Agreement) with Montana Villas Homeowners Association (Association), an unincorporated association of residential condominium owners. The Agreement provided that Pegasus as the agent of the Association would manage the condominium property and arrange for repairs of the common area for a fee. The Agreement further provided that employees hired by Pegasus to maintain or repair the property would be employees of the Association, although Pegasus had responsibility to comply with labor laws. The Agreement also provided that expenditures in excess of $100 required approval by the Association, and that Pegasus would be reimbursed for any advances or costs.

At an Association meeting, condominium owners agreed that new rain gutters should be installed on part of the condominium building as recommended by Pegasus. Pegasus hired Mark Hruby doing business as Rube's Rain Gutter Service (Hruby), an unlicensed contractor that was also uninsured for workers' compensation. The job contemplated was no more than two days and the cost was $1050.

Hruby hired Freddy Aguilera to perform some of the work at $65 a day. On November 5, 1997, the first day of the job, a rain gutter contacted a high-voltage electrical wire and Aguilera was severely shocked and fell and was seriously injured. Hruby completed the job and was paid by check.

Aguilera filed for workers' compensation naming Hruby as the employer, and the Uninsured Employers Benefits Trust Fund (Fund),[2] Pegasus, the Association and the individual condominium owners (owners) were joined as defendants. The parties proceeded to trial and Hruby and Aguilera testified.

---

[2] The Fund provides workers' compensation in place of illegally uninsured employers, who may be subject to penalties, civil liability and reimbursement of the Fund. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388–389 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*); § 3710 et seq.)

The workers' compensation administrative law judge (WCJ) determined that Hruby was the employer of Aguilera and was liable for workers' compensation including 90 percent permanent disability. In the opinion, the WCJ explained that even though Hruby did not have the required contractor's license and was not an independent contractor under section 2750.5,[3] the owners were not employers under section 3351, subdivision (d)[4] because Aguilera had not worked sufficient hours under section 3352, subdivision (h)[5] and *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227 [130 Cal.Rptr.2d 581] (*Cedillo*).[6] In addition, Aguilera did not have enough hours for casual employment under section 3715, subdivision (b).[7] The WCJ also

---

[3] Section 2750.5 states in part: "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor. . . . [¶] . . . [¶] . . . any person performing any function or activity for which a license is required . . . shall hold a valid contractors' license as a condition of having independent contractor status. [¶] For purposes of workers' compensation law, this presumption is a supplement to the existing statutory definitions of employee and independent contractor, and is not intended to lessen the coverage of employees under Division 4 and Division 5."

[4] Section 3351 states in part: " 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes: [¶] . . . [¶] (d) Except as provided in subdivision (h) of Section 3352, any person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant."

[5] Section 3352 in relevant part states: " 'Employee' excludes the following: [¶] . . . [¶] (h) Any person defined in subdivision (d) of Section 3351 who was employed by the employer to be held liable for less than 52 hours during the 90 calendar days immediately preceding the date of the injury . . . or who earned less than one hundred dollars ($100) in wages from the employer during the 90 calendar days immediately preceding the date of the injury . . . . "

[6] In *Cedillo*, a homeowner hired an unlicensed and uninsured roofer whose employee was injured after about 14 hours on the job. The Court of Appeal affirmed that the homeowner was not the employer liable for workers' compensation even though the roofer was unlicensed under section 2750.5, since neither the roofer nor the injured employee worked sufficient hours under section 3352, subdivision (h). However, the court concluded the roofer was a liable employer even though unlicensed. (*Cedillo, supra,* 106 Cal.App.4th at pp. 235–236.)

[7] Section 3715, subdivision (b) states in part: ". . . any person described in subdivision (d) of Section 3351 who is . . . (3) engaged in casual employment where the work contemplated is to be completed in not less than 10 working days, without regard to the number of persons employed, and where the total labor cost of the work is not less than one hundred dollars ($100) (which amount shall not include charges other than for personal services), shall be entitled, in addition to proceeding against his or her employer by civil action in the courts as provided in Section 3706, to file his or her application with the appeals board for compensation. The appeals board . . . shall make the award to the claimant as he or she would be entitled to receive if the person's employer had secured the payment of compensation as required . . . ."

Historically, employment that was both casual and not in the usual course of the trade, business, profession, or occupation of the employer was excluded from workers', compensa-

reasoned that, "the agents, whether the Association or Pegasus, would be entitled to the rights and liabilities of the owners and should, be deemed owners within Labor Code §§ 3351(d) and 3352(h)." Aguilera petitioned the WCAB for reconsideration that he was permanently totally disabled, and agreed with the Fund that the Association may be liable.

The WCAB granted reconsideration and determined that Hruby "did not possess a valid contractor's license at the time of the injury and therefore is not the employer of applicant for purposes of liability for workers' compensation benefits." The WCAB determined further that Hruby was hired by Pegasus, "a professional property management business" and "an agent for the homeowners' association," and "therefore under Labor Code section 2750.5, became the employer of applicant, Freddy Aguilera." The WCAB awarded Aguilera workers' compensation to be paid by Pegasus. The WCAB also ordered further development of the record by the WCJ to determine whether Aguilera was permanently totally disabled.

Pegasus petitions for writ of review and contends that the WCJ was correct that it was the agent of the Association or owners and not liable under sections 3351, subdivision (d), 3352, subdivision (h) and 3715, subdivision (b). Pegasus also claims that the Association or owners selected Hruby from three bids and paid for the rain gutter installation.

The Fund answers that sections 3351, subdivision (d) and 3352, subdivision (h) do not apply since Pegasus was not an owner, even if Pegasus was the agent of the owners or the Association. Pegasus was the joint

---

tion. (Roseberry Act of 1911, § 6; Boynton Act of 1913, § 14; Workmen's Compensation, Insurance and Safety Act of 1917, § 8; former § 3352, subd. (c); *Ingram v. Department of Indus. Relations* (1930) 208 Cal. 633 [284 P. 212]; *Walker v. Industrial Acc. Com.* (1918) 177 Cal. 737 [171 P. 954]; *Key Ins. Exchange v. Washington* (1970) 7 Cal.App.3d 209, 212–213 [86 Cal.Rptr. 542].) Casual employment was defined as work contemplated to be completed in 10 working days, without regard to the number of employees, and where the total labor cost was less than $100. (Former § 3354.) If either the work contemplated exceeded the 10 days *or* the cost was more than $100, the employment was not casual or excluded. (*Daniels v. Johnson* (1940) 38 Cal.App.2d 619, 621–622 [101 P.2d 707].) Former section 3354 was deleted by the legislation in 1975 which added section 3351, subdivision (d) so that casual employment would be covered under workers' compensation. (*State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1997) 16 Cal.4th 1187, 1205 [69 Cal.Rptr.2d 602, 947 P.2d 795] (*State Farm*); *Scott v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 979, 985 [176 Cal.Rptr. 267].) The reference to casual employment essentially in its present form was then added to section 3715, subdivision (b) by the legislative revisions in 1977, and whether the WCJ's test in the disjunctive for casual employment and liability under the statute is correct is undecided. (See *California State Automobile Assn. Inter-Ins. Bureau v. Workers' Comp. Appeals Bd.* (2006) 137 Cal.App.4th 1040, 1046–1048 [40 Cal.Rptr.3d 743].)

employer of Aguilera under section 2750.5 since Pegasus hired Hruby, an unlicensed contractor, as expressly found by the WCJ and WCAB. In addition, all the defendants may have liability as employers under section 3715, subdivision (b) because Aguilera's labor cost was in excess of $100.

Aguilera answers that he is permanently totally disabled and the Association, which is a separate legal entity, may be liable because Pegasus hired Hruby on behalf of the Association. This court requested further briefing from the parties regarding ownership of the property and liability under the principles of agency.[8]

The WCAB responds that Hruby was hired by Pegasus as agent of the Association, which is indicated by the Agreement and minutes from an Association meeting. The WCAB concludes that as the principal the "home-owners' association may also be held liable as a joint employer of the unlicensed contractor under Labor Code section 2750.5." The Association is not an exempt employer under sections 3351, subdivision (d) and 3352, subdivision (h) because it was not an owner and "homeowner associations are separate and independent legal entities from the unit owners." Even if the Association was an owner, the WCAB reasons, "the unlicensed contractor's work for the homeowners' association was not 'personal' because it was in the course of the association's trade or business, management of the common areas of the condominium complex."

Pegasus responds that it hired Hruby as instructed by the directors of the Association and in compliance with the Agreement. It argues the Association is not an owner according to the governing documents and the Civil Code,[9] and is a liable employer unprotected by sections 3351, subdivision (d) and 3352, subdivision (h); therefore, Pegasus and the directors are not liable.

---

[8] The court asked the parties the following questions:

"1. Why should not the homeowners' association (as opposed to the individual unit owners) be deemed the owner of the common area for the purposes of this proceeding?

"2. Was there an agency relationship between the homeowners' association and Pegasus when the unlicensed contractor was hired?

"3. If the property management company hired the unlicensed contractor and is an employer liable for workers' compensation under Labor Code section 2750.5, what is the liability, if any, of the homeowners' association?

"4. Is the homeowners' association excused from liability pursuant to Labor Code section 3351, subdivision (d) and Labor Code section 3352, subdivision (h)?"

[9] See Civil Code section 1362 which provides: "Unless the declaration otherwise provides, in a condominium project, or in a planned development in which the common areas are owned by the owners of the separate interests, the common areas are owned as tenants in common, in equal shares, one for each unit or lot."

The owners answer that the Association should be deemed an owner under the Labor Code because homeowners associations have rights and liabilities of owners under the Civil Code.[10] Otherwise, the owners contend, they would not receive the benefit of sections 3351, subdivision (d) and 3352, subdivision (h) as intended by the Legislature.

## DISCUSSION

### 1. *Standard of Review.*

#### a. *Factual Findings.*

A decision by the WCAB that is based on factual findings which are substantial evidence is generally affirmed by the reviewing court. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26].) However, the reviewing court is authorized to reject factual findings that are erroneous, unreasonable, illogical, improbable, or inequitable when viewed in light of the entire record and the overall statutory scheme. (*Western Growers, supra,* 16 Cal.App.4th at p. 233; *Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537].)

#### b. *Statutory Interpretation.*

Interpretation of governing statutes or application of the law to undisputed facts is decided de novo by the reviewing court, even though the WCAB's interpretation is entitled to great weight unless clearly erroneous. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486] (*Boehm & Associates*); *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197] (*Ralphs Grocery Co.*).) The Legislature's intent should be determined and given effect when interpreting and applying statutes. (*DuBois, supra,* 5 Cal.4th at p. 387; *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The Legislature's intent is normally determined from the plain meaning of the statutory language, unless the language or intent is uncertain or ambiguous. (*DuBois, supra,* 5 Cal.4th at pp. 387–388; *Moyer, supra,* 10 Cal.3d at p. 230.) Interpretation of the statutory language should be consistent with the purpose of the

---

[10] For example, the owners cite Civil Code section 1368.3 which provides in part: "An association established to manage a common interest development has standing to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name as the real party in interest and without joining with it the individual owners of the common interest development, in matters pertaining to the following: [¶] (a) Enforcement of the governing documents. [¶] (b) Damage to the common area. . . . "

statute and the statutory framework as a whole. (*DuBois, supra,* 5 Cal.4th at p. 388; *Moyer, supra,* 10 Cal.3d at p. 230.) Where statutory language or the Legislature's intent is uncertain or ambiguous, rules of construction, legislative history or historical use may aid in determining the meaning or intent. (*DuBois, supra,* 5 Cal.4th at pp. 387–388, 393.)

### 2. *Hruby Was an Unlicensed Contractor.*

■ A general or specialty contractor must be licensed to perform the contracted work. (Bus. & Prof. Code, §§ 7057 et seq., 7065 et seq.) ■ A contractor that selects, cuts, shapes, fabricates and installs sheet metal such as rain gutters is a specialty contractor who is required to have a class C-43 license. (See Cal. Code Regs., tit. 16, § 832.43.) Hruby testified at trial that he was hired to install rain gutters on the condominium building, and did not have the required class C-43 license on the date of Aguilera's injury. (See *Zellers v. Playa Pacifica, Ltd.* (1998) 61 Cal.App.4th 129, 133–134 [70 Cal.Rptr.2d 919] [workers' compensation exclusive remedy under § 2750.5 where property owner hired licensed contractor whose license was expired when employee injured].) This testimony was uncontradicted and unimpeached and is substantial evidence that supports the WCAB's finding that Hruby was an unlicensed contractor. (See *Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317–318 [90 Cal.Rptr. 355, 475 P.2d 451]; *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432].)

### *Legal Consequences of Hiring an Unlicensed Contractor.*

■ Among the legal consequences of hiring an unlicensed contractor who is injured or whose employee is injured performing the work is that different employment relationships may arise with respect to "employer" liability for workers' compensation or tort damages. For example, in *State Compensation Ins. Fund. v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5 [219 Cal.Rptr. 13, 706 P.2d 1146] (*State Fund*), the Supreme Court concluded that a homeowner, who hired an unlicensed contractor that fell from a scaffold, was required to assume the status of "employer" for workers' compensation liability; this is so because section 2750.5 requires an independent contractor to be licensed as a matter of law. In *Blew v. Horner* (1986) 187 Cal.App.3d 1380 [232 Cal.Rptr. 660] (*Blew*), a general contractor who hired an unlicensed and uninsured subcontractor was determined to be the "employer" of the subcontractor and the subcontractor's injured employee, and workers'

compensation was the exclusive remedy against the general contractor. (See also *Nick Hagopian Drywall v. Workers' Comp. Appeals Bd.* (1988) 204 Cal.App.3d 767, 771–772 [251 Cal.Rptr. 455] [licensed and insured contractor "employed" unlicensed subcontractor's injured employee who is not estopped for subcontractor's misrepresentation he had license], which cites *Rinaldi v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 217, 221 [244 Cal.Rptr. 637] [licensed and uninsured general contractor "employed" unlicensed and uninsured subcontractor's injured employee, who is not estopped for subcontractor's misrepresentation he had license].)

However, the owner or occupant of a *residential* dwelling who hires an unlicensed contractor whose employee is injured may not be the "employer" liable for workers' compensation under section 2750.5 or section 3351, subdivision (d) unless the employee worked sufficient hours under section 3352, subdivision (h). (*Cedillo, supra,* 106 Cal.App.4th at pp. 235–236; see also *Furtado v. Schriefer* (1991) 228 Cal.App.3d 1608 [280 Cal.Rptr. 16] [matter remanded to determine whether homeowner "employed" injured unlicensed painter under § 3352, subd. (h), which controls over § 2750.5].) Nevertheless, a homeowner may be an "employer" liable in tort under section 2750.5, and the unlicensed contractor who was also uninsured may be a dual employer with tort liability under section 3706.[11] (*Cedillo, supra,* 106 Cal.App.4th at pp. 236–237.) Since Hruby was an unlicensed contractor when he contracted with Pegasus and at the time Aguilera was injured on the job, it is necessary for us to examine the potential employment relationships in order to determine liability.

### 3. *Hruby Is a Liable Employer Under Division 4 of the Labor Code.*

The WCAB determined that Pegasus was the "employer" liable for workers' compensation under section 2750.5 and the Labor Code. Pegasus contends that the WCJ correctly found that Hruby was the liable employer.

■ Generally, employment relationships that result in workers' compensation liability are predicated more upon the definitions pertaining to employees under section 3351 et seq. than employers under section 3300 et seq. (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 727–728 [199 Cal.Rptr. 697] (*In-Home Supportive Services*).)[12] The

---

[11] Section 3706 states: "If any employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages, as if this division did not apply."

[12] In *In-Home Supportive Services, supra,* 152 Cal.App.3d 720, an attendant who was hired by the county as part of a state in-home assistance program injured her back while lifting a disabled person out of a car. Although the attendant had insufficient hours to qualify as an employee of the disabled person under section 3352, subdivision (h), the court concluded that

definitions are an outgrowth and expansion of common law employment concepts such as the employer's right of control over service provided by the employee. (*Id.* at pp. 727–729.) In addition, the definitions are part of division 4 of the Labor Code, which specifically addresses workers' compensation. Section 2750.5 is part of division 3 of the Labor Code which supplements and does not override the division 4 definitions of employers and employees. (*State Fund, supra,* 40 Cal.3d at pp. 9–15; *Cedillo, supra,* 106 Cal.App.4th at pp. 232–234.)

■ Applying these principles, we conclude that Hruby was a dual employer of Aguilera and is liable for workers' compensation under division 4 of the Labor Code. It is undisputed that Hruby hired Aguilera to perform service within the meaning of sections 3351 and 3300.[13] By rendering service, Aguilera is presumed to be Hruby's employee under section 3357.[14] Aguilera rendered the service as an employee, and not as an independent contractor under sections 3357 and 3353,[15] because Hruby was in the business of rain gutter installation, contracted with Pegasus, paid wages and controlled Aguilera's work and hours. (See *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350–355 [256 Cal.Rptr. 543, 769 P.2d 399].)

■ ▪ In addition, section 2750.5 supplements and does not negate application of the division 4 definitions of employer and employee to Hruby. Although the WCAB determined that Pegasus and not Hruby was the "employer" solely liable for workers' compensation, *Cedillo* indicates that there may be dual employment of an injured employee by the unlicensed contractor under division 4 of the Labor Code *and* the contractor's hirer under section 2750.5. (*Cedillo, supra,* 106 Cal.App.4th at pp. 235–236.) In *Cedillo,* the unlicensed contractor contended that he could not be the employee of the homeowner under section 2750.5 and the employer of the injured employee at the same time. The court explained that a similar claim was rejected in *Hernandez v. Chavez Roofing, Inc.* (1991) 235 Cal.App.3d 1092 [286 Cal.Rptr. 919], where the unlicensed and uninsured subcontractor was potentially liable in tort under section 3706, even though the general

---

the state was a dual employer with supervision and the right of control with the county as its agent under section 3351. (152 Cal.App.3d at pp. 729–733.) The court also rejected that employment by the disabled recipient under section 3351.5 excludes other employment relationships under the statutory scheme. (152 Cal.App.3d at pp. 733–738.)

[13] Section 3300 in part provides: "As used in this division, 'employer' means: [¶] . . . [¶] (c) Every person . . . which has any natural person in service."

[14] Section 3357 states: "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee."

[15] Section 3353 provides: " 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

contractor was licensed and insured for workers' compensation.[16] (*Cedillo, supra*, 106 Cal.App.4th at p. 236.) Section 3706 is part of division 4 of the Labor Code and subjects employers under the division to an action at law as if the division did not apply for failing to secure the payment of workers' compensation. In addition to the civil action authorized by section 3706, workers' compensation is a cumulative remedy under section 3715.[17] (See *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1173–1174 [2 Cal.Rptr.3d 408] (*Le Parc*).)

In this case, Hruby admitted at trial that he was an unlicensed contractor and illegally uninsured for workers' compensation when Aguilera whom he had hired was injured on the job. Consequently, Hruby is liable to Aguilera for workers' compensation under section 3715, subdivision (a),[18] and is potentially liable in tort under section 3706. (*Cedillo, supra*, 106 Cal.App.4th at pp. 235–236.)

### 4. *Pegasus Is a Liable "Employer" Under Section 2750.5.*

The WCAB determined that Pegasus is the liable "employer" for workers' compensation under section 2750.5, *State Fund* and *Blew* because Pegasus hired Hruby who was an unlicensed contractor when Aguilera was injured. Pegasus contends that the WCAB erred because the Association or owners selected Hruby from three bids and instructed Pegasus to hire Hruby as indicated by the Agreement and payment from the Association's account. The Fund answers that the claimed bids and payment are not part of the record, and the WCAB's finding that Pegasus hired Hruby is based on substantial evidence and must be affirmed.

#### a. *Substantial Evidence Supports the Finding That Pegasus Hired Hruby.*

Only the invoice from Hruby, which was billed to Pegasus, is part of the record and the alleged bids and documentation of who actually paid for

---

[16] The court in *Hernandez* cited *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 333 [265 Cal.Rptr. 788] (injured employee of unlicensed and insured subcontractor limited to workers' compensation and precluded from personal injury action against licensed and insured general contractor).

[17] Section 3715, subdivision (a) states in part: "Any employee, except an employee as defined in subdivision (d) of Section 3351, whose employer has failed to secure the payment of compensation as required by this division, or his or her dependents in case death has ensued, may, in addition to proceeding against his or her employer by civil action in the courts as provided in Section 3706, file his or her application with the appeals board for compensation . . . ."

Section 3715, subdivision (b) addresses illegally uninsured employers who employ employees defined by section 3351, subdivision (d). (See fn. 7, *ante*.)

[18] See *Le Parc, supra*, 110 Cal.App.4th at pages 1173–1174.

the work is not. However, the WCJ reported that the owners agreed to the installation of new rain gutters at an Association meeting, and the WCAB indicates that Pegasus was authorized to obtain bids based on the Association's minutes. We also note that the Agreement provides that repairs in excess of $100 must be approved by the Association, and that Pegasus was the Association's agent. The Agreement further provides that Pegasus was an independent contractor in the business of managing properties, which is undisputed.

Nevertheless, there is no evidence that the Association or owners received bids, instructed Pegasus who to hire or had any direct involvement with Hruby. In addition, Hruby testified at trial that he agreed to install rain gutters on the condominium building with Pegasus, and did not recall contact with the owners or whose check paid for the job. These facts confirm that the agreement for installation of the rain gutters was between Hruby and Pegasus, which was an independent contractor in the business of managing properties that was acting on behalf of the Association. Therefore, the WCAB's determination that Hruby was hired by Pegasus is supported by substantial evidence. Since Hruby was an unlicensed contractor when Aguilera was injured on the job *and* when Pegasus hired Hruby, Pegasus was an "employer" that is jointly and severally liable for workers' compensation under section 2750.5, *State Fund* and *Blew*.

### b. *Pegasus Was the Association's Agent.*

Pegasus contends further that even if it hired Hruby, the WCJ was correct that it was the agent of the Association or owners and should be deemed an owner and exempt employer under sections 3351, subdivision (d) and 3352, subdivision (h) and *Cedillo*. However, the WCAB determined that Pegasus was the agent of the Association and neither were owners. The Fund argues that Pegasus was not an owner regardless of agency status. Although Pegasus concedes it was not an owner, we shall address whether Pegasus was the agent of the Association or owners and should be deemed an owner within the meaning of sections 3351, subdivision (d) and 3352, subdivision (h).

### (1) *The Agreement.*

There is substantial evidence supporting the WCAB's finding that Pegasus was the Association's agent when Pegasus hired Hruby. An agent generally represents the principal in dealings with third persons (Civ. Code, § 2295), may be authorized to do any act the principal may do (Civ. Code, § 2304), and receives authority either by prior agreement or ratification (Civ. Code, § 2307). Prior authority was clearly provided by the Agreement and the Association meeting. The Agreement was between the Association and

Pegasus, and was also executed by the Association's president and treasurer and Pegasus. Moreover, the Agreement provides that Pegasus is an independent contractor in the business of managing properties and the agent of the Association. The Agreement also states that Pegasus is authorized to manage the condominium building and provide for repairs, including the hiring of others, with Association oversight, approval of expenditures over $100 and reimbursement for advances or costs. Pursuant to the Agreement and the Association meeting, the rain gutter repair and installation was authorized and Pegasus hired Hruby, who completed the job and was paid.

### (2)  *The Davis-Stirling Common Interest Development Act.*

The agency relationship between Pegasus and the Association under the Agreement is also consistent with the statutory scheme under Civil Code section 1350 et seq., which specifically address common interest developments such as condominium projects and associations and is known as the Davis-Stirling Common Interest Development Act. (See *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 252 [87 Cal.Rptr.2d 237, 980 P.2d 940] (*Lamden*) [property damage from unincorporated homeowners association spot treatment of termite infestation is subject to good faith business judgment rule and not personal injury negligence standard].) Under Civil Code section 1363, subdivision (a), "A common interest development shall be managed by an association that may be incorporated or unincorporated."[19] In addition, "the association is responsible for repairing, replacing, or maintaining the common areas" under Civil Code section 1364, subdivision (a).

It is also well established that a homeowners association is a separate legal entity apart from the owners, whether incorporated or not, with standing to sue or be sued even by a member. In *White v. Cox* (1971) 17 Cal.App.3d 824, 828–831 [95 Cal.Rptr. 259] (*White*), the court concluded that an unincorporated condominium association was a separate legal entity, which could be sued for negligence by a condominium owner. Similarly, the Supreme Court in *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499–500 [229 Cal.Rptr. 456] (*Frances T.*) cited *White* with approval in concluding that an unincorporated condominium association has a separate legal existence, and could be held to a landlord's duty of care to provide safety to its members. (See also *Lamden, supra*, 21 Cal.4th at pp 260–261; Corp. Code, § 18105 et seq.)

---

[19] See Civil Code section 1351, subdivision (a) which states: ' "Association' means a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development." See also Civil Code section 1363, subdivision (c) and Corporations Code section 18000 et seq., which was enacted in 2004 and addresses associations that are unincorporated (Corp. Code, § 18035, subd. (a)) or nonprofit (Corp. Code, § 18020).

Civil Code section 1363.2 also provides for a "managing agent," which under subdivision (f) is defined as "a person or entity, who for compensation, or in expectation of compensation, exercises control over the assets of the association" and "does not include a full-time employee of the association." The statute further provides that the "managing agent" is authorized to receive funds belonging to the association for deposit into a trust fund account. (See also Corp. Code, § 18065, which was enacted in 2004 and provides: "Except to the extent this title provides a specific rule, the general law of agency, including Article 2 (commencing with Section 2019) of Chapter 2 of Title 6 of, and Title 9 (commencing with Section 2295) of, Part 4 of Division 3 of the Civil Code, applies to an unincorporated association.")

In this case, the Association was unincorporated and a separate legal entity that delegated management and maintenance of the condominium building to Pegasus as the "managing agent" under the Agreement and the Davis-Stirling Common Interest Development Act. Consistent with the Civil Code, the Agreement further provided that Pegasus was a paid independent contractor and not an employee, whose duties included collecting and depositing into the Association's account membership dues, fees, or assessments and preparing checks.

### c. *Pegasus's Liability Is Unchanged by Its Agency Status.*

Pegasus contends that as the agent of the Association or owners, it has the same rights or legal status as its principal under Civil Code section 2330[20] and is an owner and exempt employer under sections 3351, subdivision (d) and 3352, subdivision (h). We disagree.

Civil Code section 2330 plainly states that rights and liabilities accrue from the agent's authorized acts to the principal. The statute does not state that the principal's rights or defenses accrue to the agent. Moreover, Pegasus was the agent of the Association, not the owners, as determined by the WCAB.

---

[20] Civil Code section 2330 states: "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal."

It is also well established that an agent may be liable for his or her own acts on behalf of the principal whether or not the principal is liable. (See *Frances T., supra*, 42 Cal.3d at pp. 505, 511.) For example, in *Cowell v. Industrial Acc. Com.* (1938) 11 Cal.2d 172, 176–177 [78 P.2d 1016] (*Cowell*), a corporate cement business, which also managed the stockholders' ranch and hired the ranch hand who was injured, was determined to be the agent and joint employer. And although liability of the county as the state's agent was not addressed in *In-Home Supportive Services, supra*, 152 Cal.App.3d at pages 729–730, the state as principal was determined to be a dual employer because the county hired the injured employee and both had the right of supervision and control.

In this case, Hruby was hired directly by Pegasus as the "managing agent" on behalf of the Association. Since Pegasus was also an independent contractor in the business of managing properties and Hruby had no dealings with the Association, Pegasus "was in the best position to make the determination whether the price of the contract reflected the cost of insurance for workers' compensation purposes and whether Mr. Hruby was properly licensed to perform the work" as stated by the WCAB. Moreover, the Agreement provided that Pegasus had responsibility for labor laws even though employees hired to perform maintenance or repairs would be employees of the Association. For these reasons, we conclude that Pegasus is an "employer" liable for workers' compensation under section 2750.5, and is not exempted under sections 3351, subdivision (d) and 3352, subdivision (h) whether the agent of the Association or the owners. (Civ. Code, § 2330; *Cowell, supra,* 11 Cal.2d at pp. 176–177; *In-Home Supportive Services, supra,* 152 Cal.App.3d at pp. 729–730.)

### 5. *The Association Is Liable as Principal.*

Throughout the proceedings, Aguilera, the Fund, Pegasus and the WCAB have taken the position that the Association is liable because Hruby, who was an unlicensed contractor, was hired by Pegasus as the agent of the Association. As we have already noted, we have concluded that Pegasus is an employer that is jointly and severally liable for workers' compensation under section 2750.5, *State Fund* and *Blew*. In addition, we have concluded that Hruby was hired by Pegasus as the agent of the Association, which is the principal and a separate legal entity. We have also explained that liability for an agent's authorized acts may be imputed from the agent to the principal pursuant to Civil Code section 2330, *Cowell* and *In-Home Supportive*

*Services.*[21] Even if the Association were also the agent of the owners as reasoned by the WCJ, the Association may be liable for its own acts. (See *Frances T., supra*, 42 Cal.3d at p. 505.)

The owners admit the agency relationship between Pegasus and the Association but contend, as determined by the WCJ, that the Association should be deemed an owner and exempt "employer" under sections 3351, subdivision (d) and 3352, subdivision (h). Otherwise the owners will not benefit from sections 3351, subdivision (d) and 3352, subdivision (h) as the Legislature intended, "since imposing liability on the homeowner's association would necessarily impose liability on each individual homeowner."

However, we need not decide whether the Association should be deemed an owner and an exempt "employer" since we agree with the WCAB that the duties of Hruby and Aguilera were not "personal" and were in the "trade or business" of the Association contrary to section 3351, subdivision (d). The owners do not address this issue.

Although under section 3351, subdivision (d) an employee is a person "whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, *or* whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant" (italics added), the WCAB's interpretation that the language defining duties should be read together rather than separately is entitled to great weight unless clearly erroneous. (See *Boehm & Associates, supra*, 76 Cal.App.4th at pp. 515–516; *Ralphs Grocery Co., supra*, 38 Cal.App.4th at p. 828; *Nunez v. Workers' Comp. Appeals Bd.* (2006) 136 Cal.App.4th 584, 587 [38 Cal.Rptr.3d 914].) We note that when the Legislature added and revised section 3351, subdivision (d)[22] and Insurance Code

---

[21] See also Corporations Code section 18250, which was enacted in 2004 and was based on Corporations Code former section 24001 and which states: "Except as otherwise provided by law, an unincorporated association is liable for its act or omission and for the act or omission of its director, officer, agent, or employee, acting within the scope of the office, agency, or employment, to the same extent as if the association were a natural person."

[22] Section 3351, subdivision (d) was added in 1975 and provided: "Any person employed by the owner of a private dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the performance of household domestic service. For the purposes of this subdivision, household domestic service shall include, but not be limited to, the care and supervision of children in a private residence." Section 3351, subdivision (d) was amended in 1977 to essentially its current form and sectiom 3352, subdivision (h) was added. (See fn. 4 & fn. 5, *ante.*)

sections 11590[23] and 11591,[24] so that homeowner liability policies would provide workers' compensation coverage for residential·employees,[25] coverage for duties performed in the business of the insured was expressly excluded. Moreover, each statute contains language or references to the other statutes that indicate the Legislature intended these statutes to be interrelated and read together.[26] Therefore, the WCAB's interpretation of section 3351, subdivision (d), that the language defining duties should be read together, is consistent with the statutory scheme.[27]

In addition, the WCAB's determination that the rain gutter repair and installation was not "personal" and was in the "trade or business" of the Association under section 3351, subdivision (d) is consistent with the record, the Labor Code and the Davis-Stirling Common Interest Development Act. The Association managed the condominium building and provided for maintenance or repairs pursuant to the Agreement and Civil Code section 1364,

---

[23] Insurance Code section 11590 was also added in 1975 and stated: "Except as provided in Section 11591 or 11592, no policy providing comprehensive personal liability insurance, or endorsement thereto, may be issued, amended, or renewed in this state on or after January 1, 1977, unless it contains a provision for coverage against liability for the payment of compensation, as defined in Section 3207 of the Labor Code, to any person defined as an employee by subdivision (d) of Section 3351 of the Labor Code. Any such policy in effect on or after January 1, 1997, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein."

Insurance Code section 11590 was also revised in 1977 and basically was unchanged except for the addition of the provision: "However, such coverage shall not apply if any other existing, valid and collectible, workers' compensation insurance for such liability is applicable to the injury or death of such employee."

[24] Insurance Code section 11591 was also added in 1975 and provided: "The requirements of Section 11590 shall be inapplicable to any such policy of insurance or endorsement where the services of such employee are in connection with the business pursuits of the insured."

Insurance Code section 11591 was also amended in 1977 and states: "The requirements of Section 11590 shall be inapplicable to any such policy of insurance or endorsement where the services of such employee are in connection with the trade, business, profession, or occupation, as such terms are defined in Sections 3355 and 3356 of the Labor Code, of the insured."

[25] See *State Farm, supra*, 16 Cal.4th at pages 1193–1196 (son hired to work on father's residence not excluded under § 3352, subd. (a) and homeowner's policy since coverage elected by insuring under § 4150 et seq.); see also *In-Home Supportive Services, supra*, 152 Cal.App.3d at pages 735–736.

[26] In contrast, the Supreme Court in *State Farm* concluded that insurance coverage under Insurance Code section 11590 was broader than indicated by section 3351, subdivision (d) because there was no reference in these statutes to section 3352, subdivision (a), which excludes residential employees employed by a parent, spouse or child. (*State Farm, supra*, 16 Cal.4th at pp. 1194–1198.)

[27] The term "personal" in section 3351, subdivision (d) may be a reference to the term "household domestic service," which was included in the 1975 version of the statute. The term "household domestic service" implies duties that are personal to the homeowner and not related to the homeowner's commercial or business activity. (See *Fernandez v. Lawson* (2003) 31 Cal.4th 31, 36–37 [1 Cal.Rptr.3d 422, 71 P.3d 779].)

subdivision (a).[28] The services provided by Hruby and Aguilera were also for maintenance or repairs within the meaning of section 3355,[29] and management and maintenance by the Association were provided on a regular basis under the Agreement and section 3356.[30] Moreover, the Association had corporate powers to finance, contract and conduct business under Civil Code section 1363, subdivision (c)[31] and Corporations Code section 7140.[32] The Association performed these functions through its officers or directors and Pegasus as the paid "managing agent" under the Agreement and the Civil Code. Consequently, the duties performed by Hruby and Aguilera were not "personal" and were in the "trade, business" of the Association, and the Association was not an owner and exempt "employer" under sections 3351, subdivision (d) and 3352, subdivision (h).[33] Therefore, the Association is liable for workers' compensation as the principal of Pegasus.

### 6. *The Owners Are Not Liable for Workers' Compensation.*

We agree with the WCJ and the WCAB that the owners are not liable for workers' compensation as either an "employer" under section 2750.5 or an employer under section 3351, subdivision (d) because Aguilera did not work sufficient hours under section 3352, subdivision (h). (*Cedillo, supra,* 106 Cal.App.4th at pp. 235–236.) Even if the Association or Pegasus is the agent

---

[28] Civil Code section 1364, subdivision (a) provides in part: "Unless otherwise provided in the declaration of a common interest development, the association is responsible for repairing, replacing, or maintaining the common areas, other than exclusive use common areas . . . ."

[29] Section 3355 states: "As used in subdivision (d) of Section 3351, the term 'course of trade, business, profession, or occupation' includes all services tending toward the preservation, maintenance, or operation of the business, business premises, or business property of the employer."

[30] Section 3356 provides: "As used in subdivision (d) of Section 3351 and in Section 3355, the term 'trade, business, profession, or occupation' includes any undertaking actually engaged in by the employer with some degree of regularity, irrespective of the trade name, articles of incorporation, or principal business of the employer."

[31] Civil Code section 1363, subdivision (c) states: "Unless the governing documents provide otherwise, and regardless of whether the association is incorporated or unincorporated, the association may exercise the powers granted to a nonprofit mutual benefit corporation, as enumerated in Section 7140 of the Corporations Code, except that an unincorporated association may not adopt or use a corporate seal or issue membership certificates in accordance with Section 7313 of the Corporations Code.

"The association, whether incorporated or unincorporated, may exercise the powers granted to an association in this title."

[32] Corporations Code section 7140 states in part: ". . . a corporation . . . shall have all of the powers of a natural person, including . . . [¶] . . . (e) . . . [¶] to indemnify and purchase and maintain insurance . . . [¶] . . . [¶] (g) Levy dues, assessments . . . [¶] . . . [¶] (i) . . . Assume obligations, enter into contracts . . . [¶] . . . [¶] (*l*) Carry on a business at a profit and apply any profit that results from the business activity to any activity in which it may lawfully engage."

[33] The Fund argued at oral argument that the rain gutter repair and installation was also not "personal" and in the "trade, business" of Pegasus, and is another reason why sections 3351, subdivision (d) and 3352, subdivision (h) do not apply to Pegasus.

of the owners as suggested by the WCJ, "employer" liability for workers' compensation is not imputed to the owners as principals because of the statutory immunity provided under the Labor Code. (See *ECC Construction, Inc. v. Ganson* (2000) 82 Cal.App.4th·572, 575–576 [98 Cal.Rptr.2d 292] [condominium owners not personally liable under Corp. Code, § 7350 for construction contract with condominium association that was nonprofit mutual benefit corporation, although association may look to members for debt].) Nor are the owners "employers" that are liable for workers' compensation solely for being members of the Association since generally "[a] member of an unincorporated association does not incur liability for acts of the association or acts of its members which he did not authorize or perform." (*White, supra*, 17 Cal.App.3d at p. 827 citing *Orser v. George* (1967) 252 Cal.App.2d 660, 670–671 [60 Cal.Rptr. 708]; *Security-First Nat. Bk. v. Cooper* (1944) 62 Cal.App.2d 653, 667 [145 P.2d 722] (*Security-First National Bank*).)[34] Therefore, the owners are not liable for workers' compensation and thus benefit from sections 3351, subdivision (d) and 3352, subdivision (h) as the Legislature intended.

## *DISPOSITION*

Hruby and Pegasus were dual employers of Aguilera that are jointly and severally liable for workers' compensation under the Labor Code. Pegasus was also the agent of the Association, which was a separate legal entity that is liable for workers' compensation as the principal. Pegasus and the Association were not owners or exempt employers under sections 3351, subdivision (d) and 3352, subdivision (h). The WCAB's decision awards Aguilera workers' compensation to be paid *solely* by Pegasus. We reject that limited conclusion and hold that Hruby is jointly and severely liable with Pegasus and the Association is also liable as Pegasus's principle. To the extent that WCAB's decision is inconsistent with our conclusion, it is annulled. The award will otherwise be affirmed.

---

[34] See also *Holmes v. Roth* (1992) 11 Cal.App.4th 931, 934–935 [14 Cal.Rptr.2d 315] (mere membership does not entitle condominium owner to raise workers' compensation exclusivity as defense to doorman's negligence claim); Corporations Code section 18260, which was enacted in 2004 and is based on Corporations Code former section 24002 that is cited by *White*; Corporations Code sections 18605 and 18610 which were enacted in 2004 and codify the rule of *Security-First National Bank* and Corporations Code section 18620.

The decision of the WCAB is affirmed in part and annulled in part, and the matter is remanded for further proceedings consistent with this opinion.

Kitching, J., and Aldrich, J., concurred.

On April 11, 2007, and April 20, 2007, the opinion was modified to read as printed above.