Filed 9/1/16  Valdez v. Lu CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| OLIVIA VALDEZ et al., | B265300 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC504635) |
| v. | |
| WEI LU et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura A. Matz, Judge.  Affirmed.

Perez & Caballero, Frank J. Perez; Esner, Chang & Boyer, Stuart B. Esner, Joseph S. Persoff for Plaintiffs and Appellants.

Inglis, Gower & Warriner, Richard S. Gower, Gregory J. Bramlage for Defendants and Respondents.

_____

Plaintiffs' decedent was hired to trim a tree. Tragically, he was electrocuted while working. His survivors brought a tort action against the property owners. The trial court granted summary judgment in favor of the defendants. We affirm.

## FACTS

Roque Valdez worked weekends as a landscaper and tree trimmer. He was not licensed. Nevertheless, he trimmed many trees over the course of some 20 years, including large ones like palm trees, according to his family.

On April 18, 2011, a branch fell from a tall ash tree on the property of defendants Wei Lu and Jin Xiang in Duarte (the Lu property). A neighbor introduced Valdez as a tree trimmer to Xiang and her son Andy Guang Y. Lu. Valdez returned later to the Lu property with his associate, Luis Alfonso Contreras, who gave an estimate for trimming the tree. Contreras proffered a business card and said that he and Valdez had over 10 years of tree trimming experience.

When he came to the Lu property with Valdez to estimate the tree trimming job, Contreras saw electrical poles and lines along the street. They recognized the danger, so "we looked at the tree and we looked at the utility [ ] lines." The tree was in the middle of the yard, "a little bit higher" than the electrical lines. Its trunk was about 30 feet from the lines, and Contreras gauged the closest limb to be 10 to 15 feet from the lines.

Contreras and Valdez were undisputedly aware that the tree limbs were located near power lines. They discussed the danger this posed, and Valdez agreed to be careful. Contreras had never trimmed a tree that was so close to power lines. In his deposition, Contreras acknowledged that avoiding power lines "could be done if you used the crane with the basket."

Defendants paid Contreras and Valdez $700 to remove all limbs from the tree. Defendants never inquired whether Valdez or Contreras were licensed. Neither Andy Lu nor his parents realized that a license was required. Andy Lu told Valdez to cut the tree; to be careful with the electrical wires near the tree; and to protect the house, its fence and his fruit trees.

2

On the day of the accident, April 19, 2011, Valdez went to the Lu property with his son Daniel at 8:00 a.m. Contreras brought (in his words) "everything": truck, trailer, chainsaw, a safety belt, and ropes. It is undisputed that defendants were not home at the time, did not provide equipment to the workers, and did not supervise them. Before the work started, Daniel noticed electrical lines near the tree. Valdez, using climbing spikes and wearing a safety harness, went up into the tree. Daniel and Contreras remained on the ground, with Contreras directing Valdez which limbs to cut.

The electrical lines were open, obvious and visible. Valdez and Contreras discussed steps to take to prevent tree limbs from falling either on the house or on the electrical lines. They tied a rope to the limbs, which Contreras held: once a limb was cut, Contreras lowered it to the ground, little by little. In Contreras's view, "[e]verything was going fine."

Valdez successfully cut numerous limbs from the tree, which Contreras loaded onto his trailer, including four or five limbs near the electrical lines. By 3:00 p.m., only three limbs remained. Daniel was sweeping the driveway nearby, because the work was almost done. Daniel estimated that the limb that his father was about to cut was 18 to 24 inches from the electrical lines. Contreras tied the lowering line roped to the limb to his trailer, and was in the process of securing it to a gate pole as well, to prevent the limb from falling on the electrical lines. At that moment, he saw the chainsaw falling and sparks in the branches. Contreras did not see what provoked the accident.

Valdez died from electrocution when a tree limb he was cutting came into contact with a power line. A coroner's laboratory analysis of four blood samples showed that Valdez had a blood alcohol level (BAC) ranging from 0.20 to 0.26 percent. A forensic toxicologist retained by defendants opined that Valdez's BAC at the time of death was 0.21 percent, nearly three times the legal limit for driving in California. This level of intoxication would have affected his judgment, perception, alertness, balance, comprehension, reaction times, visual acuity, motor skills, and sensory responses.

A board certified master arborist, Robert Wallace, submitted evidence on plaintiffs' behalf. Based on his training and experience, Wallace opined that the tree's

3

size and species—coupled with its proximity to a power line—necessitated the hiring of a licensed, certified utility arborist. Not hiring a certified arborist violated the generally accepted industry standards for tree care operations embodied in American National Standards Institute (ANSI) guidelines, according to Wallace.

Wallace declared that ANSI standards called for a supervisor to be on site at all times during the trimming process, starting with a safety meeting to identify all possible hazards. The supervisor would instruct employees to use an insulated bucket truck "as it would be preferable to having someone climb into the tree to trim it." The safety meeting would address how to prevent branches from falling on power lines by cutting limbs into small pieces or redirecting branches with the use of lowering lines. Wallace believes that using a bucket truck, cutting the limbs into small pieces, or proper use of lowering lines would have avoided the accident that killed Valdez.

## PROCEDURAL HISTORY

A complaint for negligence and wrongful death was filed on April 2, 2013, by Valdez's widow and five children. The complaint alleges that defendants hired Valdez to trim a 40-foot tree, knowing that he was an unlicensed contractor. High tension electrical wires were hidden and covered by overgrown tree limbs. Defendants instructed Valdez how to cut the tree, in a manner inconsistent with industry standards, and failed to warn him about the danger posed by the electrical wires. Defendants knew or should have known that the job required a contractor's license, but they wanted to save money. Defendants denied the allegations.

Defendants brought a motion for summary judgment. They argued that they did not breach any duty of care; their conduct was not the proximate cause of Valdez's death; and the claims are barred by the Labor Code. Plaintiffs opposed the motion.

The trial court granted summary judgment, finding no evidence that defendants breached any duty owed to plaintiffs' decedent. Judgment was entered in favor of defendants on May 11, 2015. The appeal is timely.

4

## DISCUSSION

### 1. Appeal and Review

Summary judgment is proper if there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A moving defendant must show the existence of a complete defense, or that one or more elements of the plaintiffs' cause of action cannot be proven; the burden then shifts to the plaintiffs to show a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p).) On appeal, we independently examine the record and review the trial court's ruling de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

### 2. The Effect of Hiring an Unlicensed Tree Trimmer

There is no disagreement among the parties that the work performed by Valdez required a contractor's license. (Bus. & Prof. Code, § 7026.1, subd. (a)(4) [license required for tree removal, tree pruning, stump removal, or tree or limb cabling or guying, unless the worker is a gardener who performs incidental pruning of trees less than 15 feet in height].) There is also no dispute that Valdez and Contreras were unlicensed.

Plaintiffs contend that Valdez's lack of a license made him defendants' *employee*, not an independent contractor, relying on the penultimate paragraph of Labor Code section 2750.5.[1] This clause has been interpreted to mean that unlicensed contractors injured on the job are "employees of the party who hired them for purposes of establishing workers' compensation benefit eligibility." (*Ramirez v. Nelson* (2008) 44 Cal.4th 908, 912, discussing *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 15.)

"Among the legal consequences of hiring an unlicensed contractor who is injured . . . [while] performing the work is that different employment relationships may arise

---

[1]  The statute reads, in pertinent part, "any person performing any function or activity for which a license is required . . . shall hold a valid contractors' license as a condition of having independent contractor status." (Lab. Code, § 2750.5, subd. (c).)

5

with respect to 'employer' liability for workers' compensation or tort damages."
(*Heiman v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 724, 734.)  Plaintiffs do not seek workers' compensation.  Valdez worked about seven hours for defendants. Because he worked fewer than 52 hours before the accident, he was ineligible for workers' compensation coverage.  (Lab. Code, § 3352, subd. (h); *Ramirez v. Nelson*, *supra*, 44 Cal.4th at p. 914.)

Rather than seek workers' compensation benefits, plaintiffs have brought a tort claim, as allowed by case law.  For example, in a case involving an unlicensed landscaper who fell and was injured while trimming a tree branch overhanging a homeowner's roof, a court wrote that Labor Code section 2750.5 "indicates the Legislature intended to provide a potential tort remedy to unlicensed workers injured while performing a job for which a license is required":  imposing tort liability is not an undue burden on the homeowner who hired the unlicensed workers.  (*Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 822-823.  Accord:  *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 81 [unlicensed roofer who fell from the roof after four hours of work was an employee of the homeowner who hired him and could sue for ordinary negligence].)

We cannot neglect to note the Supreme Court's admonition that the issue of whether unlicensed contractors should be deemed employees under Labor Code section 2750.5 presents a "difficult and unsettled" question.  (*Cortez v. Abich* (2011) 51 Cal.4th 285, 291.  See also *Ramirez v. Nelson*, *supra*, 44 Cal.4th at p. 916, characterizing the issue as "neither an easy nor settled one.")  As yet, the Legislature has not amended Labor Code section 2750.5.  (See *Fernandez v. Lawson* (2003) 31 Cal.4th 31, 44 (conc. opn. of Brown, J.).)  For purposes of this appeal, we shall assume that Valdez's heirs can sue for ordinary negligence.

## 3. **Negligence Claim**[2]

### a. *Overview*

When an unlicensed worker is injured and is not covered by the workers' compensation system, a homeowner may be sued for "common law negligence as distinct from strict liability." (*Zaragoza v. Ibarra* (2009) 174 Cal.App.4th 1012, 1022.) A negligence claim requires breach of a legal duty owed to plaintiff, proximately causing plaintiff's injury. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) The threshold element, the existence of a duty to use due care, presents a question of law to be decided by the court. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.)

In considering defendants' duty, a few things are clear. First, homeowners who hire unlicensed tree trimmers are not subject to the Occupational Safety and Health Act (OSHA). (*Fernandez v. Lawson*, *supra*, 31 Cal.4th at pp. 36-39 [unlicensed tree trimmer fell while trimming a 50-foot palm tree in a yard]; *Rosas v. Dishong*, *supra*, 67 Cal.App.4th at pp. 823-827.) Thus, OSHA requirements that an employer furnish a safe place of employment or safety devices do not apply. (Lab. Code, §§ 6400, subd. (a), 6401.) Second, if an unlicensed tree trimmer is electrocuted, the homeowners cannot be held strictly liable for allowing the worker to use tools or equipment within six feet of a high voltage line, in violation of the Penal Code, because the worker's own negligent acts or omissions proximately caused his fatal injuries. (*Ramirez v. Nelson*, *supra*, 44 Cal.4th at pp. 912, 919.) Third, while a homeowner may be liable to an employee for failing to warn of "'a *concealed*, preexisting hazardous condition on its premises," liability does not attach when "the high voltage power lines in question were openly visible." (*Id.* at p. 917, fn. 3.)

---

[2]     Plaintiffs' second cause of action is for wrongful death. A wrongful death claim resulting from negligence requires all of the elements of actionable negligence. (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 105.)

b. *Defendants' Showing*

Defendants wrote in their moving papers that "'[t]he proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others,'" quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 119. *Rowland* is based on the rule that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714, subd. (a).)

Defendants asserted below that they acted reasonably and did not breach a duty of care. It is undisputed that the power lines near the tree were open, obvious, and visible. The mere existence of obvious, unconcealed utility lines and power poles did not make the Lu property unreasonably unsafe. (*Ramirez v. Nelson*, *supra*, 44 Cal.4th at p. 917, fn. 3.) Before they accepted the job, Valdez and Contreras discussed the danger posed by the power lines, and Valdez agreed to be careful.

It is undisputed that defendants provided no equipment and did not supervise the job. Defendants told the workers how much of the tree should be removed, but gave no instructions on how to perform the work. Contreras represented that he and Valdez were experienced in tree trimming. Contreras and Valdez roped the limbs and used lowering lines, successfully removing limbs for seven hours, including four or five limbs near the power lines. The accident occurred when only three limbs remained, at a time when Valdez had a BAC of 0.21, a level of intoxication that would impair his judgment, balance, reactions, vision and motor skills. It is unknown how the accident occurred.

The evidence presented by defendants was sufficient to carry their burden of showing that an element of plaintiffs' claim—breach of a common law duty of care—cannot be proven. The burden shifted to plaintiffs to show a triable issue of material fact.

8

*c. Plaintiffs' Showing*

Critical facts described by defendants were undisputed in plaintiffs' opposition. Tacitly acknowledging that the Supreme Court does not require homeowners to meet the standard of care set forth in OSHA, when assessing their duties to tree trimmers, plaintiffs proposed a different route. They assert that defendants had not only a duty to act reasonably, but also had to take "special precautions" per ANSI guidelines.

Plaintiffs' expert, Robert Wallace, declared that ANSI guidelines required defendants to hire an on-site supervisor; employ a certified utility arborist; have a safety meeting; use an insulated bucket truck; ensure that branches were cut into small pieces; and redirect branches with lowering lines. The standards that Wallace relied upon for his opinions were not attached to his declaration, and the trial court did not allow plaintiffs to supply them belatedly, after defendants had submitted their reply to plaintiffs' opposition. As a result, there was no foundation for Wallace's opinions.

There are intractable problems with plaintiffs' insistence that ANSI guidelines create a triable issue of material fact as to whether defendants' conduct fell below the standard of care for homeowners who hire unlicensed tree trimmers.

First, while "ANSI provides guidelines to manufacturers[,] these guidelines are not mandatory." (*Bunch v. Hoffinger Industries, Inc.* (2004) 123 Cal.App.4th 1278, 1286.) It is unreasonable to demand that defendants conduct themselves according to nonmandatory industry guidelines, when they are not in the tree trimming industry.

Second, the ANSI guidelines are obscure. The Supreme Court rejected the use of OSHA to establish the standard of care because "overwhelming public policy and practical considerations make it unlikely the Legislature intended the complex regulatory scheme that is OSHA to apply to a homeowner hiring a worker to perform tree trimming. It is doubtful the average homeowner realizes tree trimming can require a contractor's license, let alone 'expect[s] that OSHA requirements would apply when they hire someone to trim a tree for their own personal benefit and not for a commercial purpose . . . . Moreover, homeowners are ill-equipped to understand or to comply with the specialized requirements of OSHA.' [Citation.] Imputing OSHA liability to a

9

homeowner under the circumstances of this case violates basic notions of fairness and notice." (*Fernandez v. Lawson*, *supra*, 31 Cal.4th at p. 37.)

The Supreme Court's refusal to require homeowners to comply with OSHA standards of care applies with equal force to ANSI guidelines. OSHA requirements are part of the federal law; are codified in the Labor Code; and are addressed in the California Code of Regulations. By contrast, ANSI guidelines are not part of governing law. ANSI guidelines for tree trimming are less likely than OSHA to be researched, comprehensible—or even available—to the average homeowner. It would violate basic notions of fairness and notice to expect homeowners to discover the existence of ANSI before they hire someone to trim a tree.

Third, even if the ANSI standards contained in the appellate record were applied, they do not support plaintiffs' claims. Plaintiffs' expert opined that ANSI requires the hiring of "a duly licensed certified utility arborist." ANSI does not define a "utility arborist": instead, it defines a "qualified line-clearance arborist" as "[a]n individual who, through related training and on-the-job experience, is familiar with the equipment and hazards in line clearance." There is no mention of a license or certificate.

ANSI requires identification of hazards and obstacles, including "any electrical conductors or wires." The undisputed evidence shows that Contreras and Valdez were not only aware of the power lines near the Lu property, but discussed the dangers posed by them, before and during the tree trimming. Andy Lu instructed them to be careful near the power lines. ANSI places the onus for safety on the worker: "Each person (employee or otherwise) shall be responsible for his/her own safety while on the jobsite and shall comply with the appropriate federal or state occupational safety and health standards and all rules, regulations, and orders that are applicable to his/her own actions and conduct."

ANSI requires that minimum distances be maintained when trimming near power lines, based on a calculation involving the voltage of the power lines. No evidence was submitted regarding the power line voltage in this case. Wallace declared that ANSI mandated the use of a bucket truck; however, the guidelines state only that "branches

10

contacting an energized electrical conductor shall be removed using nonconductive equipment." The evidence shows that the nearest tree branch was some distance away from electrical lines, but not in contact with them, thereby negating the need for a bucket truck under the guidelines. In sum, Wallace's opinions are not congruent with ANSI guidelines, assuming the guidelines apply here.

To the extent that plaintiffs are suggesting that defendants breached their duty of care simply by hiring Valdez, the argument fails. In *Torres v. Reardon* (1992) 3 Cal.App.4th 831, 841, the court rejected an argument that homeowners caused injuries the plaintiff sustained in a fall by not "assuring themselves that he was competent to undertake the task": Torres had represented to the homeowners "that he was experienced in tree trimming and that he was capable of the undertaking."

Contreras assured defendants that he and Valdez had been trimming trees for 10 years. Valdez's widow testified at her deposition that he had done that type of work, part time, for 20 years. Beyond the hiring, defendants did not direct the work or supply the equipment because, like most homeowners, they do not know how to trim tall trees. There is no evidence regarding the exact cause of the accident, and certainly no evidence that defendants put Valdez in contact with electrical lines. The complaint alleges that defendants "owed Mr. Valdez a legal duty of reasonable and ordinary care." To now say that defendants are liable per se, merely for hiring the experienced-but-unlicensed Valdez, is tantamount to imposing strict liability.[3]

## 4. **Labor Code Section 2801**

Defendants contend that decedent's negligence in causing his own death was greater than their own negligence, under Labor Code 2801, because he was grossly negligent in choosing to trim a tree near power lines while intoxicated. We do not reach

---

[3]     "It is 'strict liability' when neither care nor negligence, neither good nor bad faith, neither knowledge nor ignorance will save the defendant." (*Fresno Air Service v. Wood* (1965) 232 Cal.App.2d 801, 806.)

11

the merits of this point because plaintiffs failed to establish a triable issue with respect to defendants' breach of their duty of care.

## **DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.